# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00307-CV

**City of Austin, Appellant**

**v.**

**Eli J. Garza and Provident Realty Advisors, Inc., Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
### NO. 97-12434, HONORABLE PETE LOWRY, JUDGE PRESIDING

## O P I N I O N

This case concerns the development of commercial property over the Barton Creek

Watershed. Eli Garza applied for and was granted the right to develop property in what was once

known as the Garza Ranch in the Barton Creek Watershed. The regulatory scheme in place at the

time he filed his application to subdivide the property was a temporary land use ordinance, enacted

by the City of Austin, called the Interim Ordinance. The Interim Ordinance[1] was an amendment to

---

[1] The Interim Ordinance read in relevant part as follows:

ORDINANCE NO. 910221-E
AN ORDINANCE ADOPTING INTERIM NON DEGRADATION
REGULATIONS FOR THE BARTON CREEK WATERSHED AND THE
WATERSHEDS CONTRIBUTING TO BARTON SPRINGS . . . .

Part 1. Chapter 13-2 (Land use) Article V (Water Quality related Development
Intensities) of the Austin City Code of 1981 is hereby amended for an interim

the Comprehensive Watershed Ordinance ("CWO") and effective only from February 21, 1991 to August 23, 1991.[2]  Under the CWO, a commercial developer could lay up to seventy percent impervious cover.[3]  Under the Interim Ordinance, impervious cover was limited to eighteen percent. According to state and local law, the regulatory scheme in place at the time Garza originally filed his plan to develop, the Interim Ordinance, should have governed all subsequent development

period to read as provided in the attached Exhibit "A," incorporated herein as if repeated verbatim.

. . . .

Part 6.  This ordinance shall automatically expire and have no effect on August 23, 1991.

. . . .

DIVISION 5. Barton Springs and Contributing Zone

Sec. 13-2-584 UPLANDS ZONE

. . . .

(b)  Impervious cover shall be limited to the following:

| Use | Maximum Impervious Cover (NSA) | |
| --- | --- | --- |
| | Recharge Zone | Non-Recharge Zone |
| . . . . | | |
| Commercial | 18% | 30% |

Sec. 13-2-585 TRANSFER OF DEVELOPMENT INTENSITY

There shall be no transfer of development within this zone.

[2] The expiration date was later extended to October 27, 1991.

[3] Impervious cover is defined as "the total horizontal area of covered spaces, paved areas, walkways, and driveways."  *See* Austin City Code § 25-1-23.

undertaken pursuant to their application. Garza's final, approved and recorded subdivision map, however, allowed development to proceed under the more permissive CWO. The City subsequently refused to recognize the validity of Garza's subdivision map and note purporting to allow development under the CWO. Garza and intervenor, Gordon Dunaway for Provident Realty Advisors, Inc., (collectively "Garza") sued the City seeking a declaration that development could proceed under the CWO. The trial court ruled in Garza's favor. We affirm the trial court's judgment.

## STATEMENT OF FACTS

On February 21, 1991, the City passed Ordinance Number 910221-E, called the "Interim Ordinance." The Interim Ordinance was a temporary amendment to the CWO and reduced the permissible amount of impervious cover a commercial developer could lay from up to seventy percent to eighteen percent. On March 1, 1991 and during the effective period of the Interim Ordinance, Garza filed an application for approval of a subdivision plat covering approximately thirty-five acres at the intersection of Mopac and William Cannon in south Austin. The City Planning Commission ("Commission") approved the plat on May 7, 1991. The plat was recorded on September 11, 1991 and contained the following notes:

> 6.   This subdivision shall be developed, constructed and maintained in accordance
>      with the terms and conditions of Chapter 13-2, Article V, and chapter 13-7,
>      Article V, *dated June 1, 1988*.[4] (emphasis added)

---

[4] Chapter 13-2, Article V of the City Code deals with "Water Quality Related Development Intensities. Chapter 13-7, Article V deals with "Environmental Protection and Management." With

3

. . . .

> 10. Block E Lot 2 and Block A Lot will be deeded to the City of Austin as an extension of the Williamson Creek Greenbelt. This dedication will take place prior to or simultaneously with final plat approval.

Plat Note 11 dealt with the transfer of impervious cover credits and contained a table with two main columns—one marked "DONATING TRACTS" and the other "RECEIVING TRACTS. The "donating tracts" were Lots 1 and 2 of Block A and Lot 2 of Block E (Plat Note 10 above) containing 46,574 square feet. The donated square footage, 46,574, was transferred to and allocated between the "receiving tracts," which were Lots 1, 2, 3 and 4 of Block B, and Lots 1 of Blocks C, D and E.[5]

In 1997, Garza contracted to sell some of the "receiving tracts," Lots 1, 3 and 4, Block B, approximately five-and-one-half acres, to Gordon Dunaway. Closing was contingent upon obtaining a Consolidated Site Development Permit from the City. The City rejected the application because it did not conform to the Interim Ordinance.

---

the date, the Plat Note would seem to indicate that development would proceed under the CWO, which was in effect on June 1, 1988.

[5] Under a regulatory scheme which allowed a developer to take advantage of transfer credits, the donation of property to the City effectively meant that Garza could increase the square footage of the receiving tracts. For example, if a developer donated a 2,000 square foot lot to the City, the developer could then, for purposes of determining impervious cover, add 2,000 square feet to the total square footage of another lot. If the receiving lot were 4,000 square feet, without the donation, the donation would enlarge that lot to 6,000 square feet for purposes of determining impervious cover. For purposes of determining the percentages of impervious cover, then, one would use the 6,000 total lot size instead of the 4,000 square feet actual lot size. Impervious cover measuring 2,000 square feet would equate to 33% impervious cover, with the donation, and 50% impervious cover without the donation.

Garza filed suit seeking a declaratory judgment that the provisions of the CWO governed the development of the subdivision and not the Interim Ordinance. The City argued that the inclusion of the date in Plat Note 6 was, at best, a mistake and, at worst, Garza's deliberate attempt to circumvent the Interim Ordinance. Garza argued that the Commission had the authority to and did authorize the plat with the date reflected in the note. Garza also cited section 245.002(d) of the Local Government Code, which would allow him to develop pursuant to the regulatory scheme indicated in the recorded subdivision plat. The City claimed that section was unconstitutional. Garza also contended that any procedural defects in approving his subdivision map, for example, the failure to receive a formal variance, was validated by Vernon's Annotated Texas Civil Statutes, Articles 974d-39, 974d-40 and 974d-44 (the "Validation Statutes").[6] Act of June 16, 1991, 72d Leg., R.S., ch. 861, § 1, 1991 Tex. Gen. Laws 2964, *repealed by* Act of May 22, 2001, 77th Leg., R.S., ch. 1420, § 12.111(5), 2001 Tex. Gen. Laws 4343; Act of March 8, 1993, 73d Leg., ch. 6, § 1, 1993 Tex. Gen. Laws 15, *repealed by* Act of May 22, 2001, 77th Leg., R.S., ch. 1420, § 12.111(6), 2001 Tex. Gen. Laws 4343; Act of June 16, 1995, 74th Leg., R.S., ch. 792, § 1,

---

[6] The Validation Statutes provide that "all governmental acts and proceedings of a municipality since adoption or attempted adoption of the charter are validated as of the dates on which they occurred." *See West End Pink, Ltd. v. City of Irving*, 22 S.W.3d 5, 8 (Tex. App.—Dallas 1999, pet. denied) (citing Tex. Rev. Civ. Stat. Ann. art. 974d-36, § 1, art. 974d-37, § 1 (Vernon Supp.2000); Act of May 27, 1985, 69th Leg., R.S., ch. 815, § 2, 1985 Tex. Gen. Laws 2872, repealed by Act of May 1, 1987, 70th Leg., ch. 149, 1987 Tex. Gen. Laws 707, 1307). Validation statutes are effective upon passage and are unaffected by subsequent repeal. *See id*. n.1. The purpose for the validation statutes is to "give effect to an ordinance passed in good faith, but plagued by some procedural or minor defect." *See City of Murphy v. City of Parker*, 932 S.W.2d 479, 485 (Tex. 1996). "They are not intended to put the Legislature's stamp of approval on otherwise void enactments." *Id*.

Tex. Gen. Laws 4144, Act of May 22, 2001, 77th Leg., R.S., ch. 1420, § 12.111(9), 2001 Tex. Gen. Laws 4343. The City asserted that the defect was not procedural but substantive thus not subject to the Validation Statutes. Garza also questioned, under equitable estoppel principles, whether it would be fair for the City to deny the enforceability of Plat Note 6 after having accepted his donation of land as shown in Plat Note 10. The City's position was that municipalities, in general, were not subject to estoppel when exercising their regulatory power over land use. According to the City, regardless of the source of the mistake, the City could not now be bound by it.

The trial court ruled in Garza's favor and issued the following conclusions of law. First, Garza's dedication and the City's acceptance constituted a substantial benefit to the City, and estopped the city from repudiating Plat Note 6. Second, the Commission had authority to approve all the notes found in Garza's plat, thus Garza is entitled to have his site plan application reviewed and approved under the CWO per Plat Note 6. Third, Section 245.002(d) of the Government Code allows Garza, as a "permit holder," to enforce the recorded Plat Notes against the City. Fourth, the Interim Ordinance could not be applied to the Garza property after October 1991 since, by its own terms, and from its inception, was intended to expire, and did expire, in October 1991. Fifth, any defects that occurred in the process of approving the plat were validated by Vernon's Annotated Texas Civil Statutes, Articles 974d-39, 974d-40 and 974d-44 (the "Validation Statutes"). The trial court also awarded Garza attorney's fees.

The City disputes each of these conclusions of law on appeal and requests that we reverse the award of attorney's fees.

6

## STANDARD OF REVIEW

Declaratory judgments are reviewed under the same standards as other judgments and decrees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (West 1997). The trial court's conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *See Texas Dept. of Transp. v. City of Sunset Valley*, 92 S.W.3d 540, 546 (Tex. App.—Austin 2002, no pet.). Because we find two independent legal theories by which to support the trial court's judgment, we affirm and address only those two grounds.

## CONSTITUTIONALITY OF § 245.002(d)

The City argued at trial and on appeal that section 245.002(d) was an unconstitutional delegation of authority to private actors. Section 245.002(d) reads:

> Notwithstanding any provision of this chapter to the contrary, a permit holder may take advantage of recorded subdivision Plat Notes, recorded restrictive covenants required by a regulatory agency, or a change to the laws, rules, regulations, or ordinances of a regulatory agency that enhance or protect the protect, including changes that lengthen the effective life of the permit after the date the application for the permit was made, without forfeiting any rights under this chapter.

Tex. Loc. Gov't Code Ann. § 245.002(d) (West Supp. 2003).

The City argues that section 245.002(d)

> allows developers like Garza, in addition to the locked-in right to develop the project under regulations in place when the initial application is filed, to cherry-pick what other regulations will govern development of his project. Rather than applying the comprehensive set of regulations in effect at the time of the first application, section 245.002(d) allows a developer to pick and choose bits and pieces of other development regulation passed over time to compile his own 'set' of applicable

regulations. By granting developers that authority to compile their own set of rules, § 245.002(d) unconstitutionally delegates governmental authority to private actors.

. . . .

Under the language of § 245.002(d), there is a delegation of governmental authority to private actors here, because no set regulatory scheme applies to projects. Rather, the developers get to pick and choose what regulations will apply to their project over time. That ability to decide what rules apply is a delegation of governmental authority.

In reviewing the constitutionality of Section 245.002(d), we apply several well-settled principles. We are to construe a statute in a manner that renders the statute constitutional and to give effect to the Legislature's intent. *Texas Mun. League Intergovernmental Risk Pool v. Texas Workers' Compensation Comm'n*, 74 S.W.3d 377, 381 (Tex. 2002). "We presume that the Legislature intended for the law to comply with the United States and Texas Constitutions, to achieve a just and reasonable result, and to advance a public rather than a private interest." *Id*. A presumption exists that the legislative body has acted within its power. *See Patterson v. Dallas*, 355 S.W.2d 838, 841 (Tex. Civ. App.—Dallas 1962, writ ref'd n.r.e.). We should construe statutes in a manner avoiding serious doubt of their constitutionality. *See Federal Sav. & Loan Ins. Corp. v. Glen Ridge I Condominiums, Ltd.*, 750 S.W.2d 757, 759 (Tex. 1988) (citing *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833, 840 (1986)). The Legislature, however, may not authorize an action that our Constitution prohibits. *See Texas Mun. League*, 74 S.W.3d at 381. Were serious doubts to arise, we are to determine whether a construction of the statute is "fairly possible" to avoid the constitutional question entirely. *See id*. The party challenging a statute has the burden is to prove its unconstitutionality. *See Walker v. Gutierrez*, 111 S.W.3d 56, 66 (Tex.

8

2003). Article III[7], Section 1 of the Texas Constitution vests in the Legislature the power to make laws and determine public policy. *See FM Properties Operating v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000). The Legislature can delegate authority to private entities "'if the legislative purpose is discernible and there is protection against the arbitrary exercise of power.'" *See Proctor v. Andrews*, 972 S.W.2d 729, 735 (Tex. 1998) (quoting *Office of Pub. Ins. Counsel v. Texas Auto. Ins. Plan*, 860 S.W.2d 231, 237 (Tex. App.—Austin 1993, writ denied).

Our first inquiry necessarily must be whether there has been, in fact, a delegation of legislative powers. The City challenges the constitutionality of the delegation at issue here because the delegation allows the developer to "pick and choose what regulations will apply to their project over time."[8]

---

[7] The Texas Supreme Court in *Proctor* distinguished between a legislative delegation under Article II and Article III of the Texas Constitution. *See* 972 S.W.2d at 732-33. Section 1 of Article II explicitly prohibits the Legislature from delegating its lawmaking power to the executive or judicial branches. *See id.* at 733. Section 1 of Article III vests the power to make laws with the Legislature. *See id.* Both Articles II and III are at issue where the Legislature has delegated its lawmaking authority to the other branches of government. *See id.* Only Article III is at issue where the Legislature has made a delegation to a non-governmental entity.

[8] A delegation of legislative powers occurs when a private entity is given the power (1) to make rules, (2) determine public policy, (3) provide the details of the law, (4) promulgate rules and regulations to apply the law, or (5) ascertain conditions upon which existing laws may operate. *See FM Properties*, 22 S.W.3d at 873. As set out above, the City argued that allows developers like Garza were allowed to "cherry-pick" between regulations thus compiling their own set of applicable regulations. Their complaint, then, is not that Garza was allowed to make rules, determine public policy, provide the details of the law or promulgate rules and regulations but that Garza was allowed to "ascertain conditions upon which existing laws may operate."

Section 245.002(d) allows a "permit holder"[9] to "take advantage of recorded subdivision Plat Notes . . . ." *See id.* § 245.002(d).[10]  By contrast, section 245.002(a) requires regulatory agencies to consider only the "orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time the original application for the permit is filed." *See* Tex. Loc. Gov't Code Ann. § 245.002(a).  In effect, paragraph (d) allows a property owner to elect between developing pursuant to the notes within the subdivision plat or pursuant to the regulatory scheme in effect at the time the owner originally filed for a permit.

The issue is whether in providing a landowner the choice to develop under the terms and conditions found in either the regulatory scheme in place at the time the developer originally filed the application to develop the property or the regulatory scheme as indicated in the plat is an unconstitutional delegation of legislative power?  We think not.

In *FM Properties Operating v. City of Austin*, the Texas Supreme Court held that a statute which allowed private landowners to create their own water quality regulations and exempt themselves from the applicable regulations was a delegation of legislative powers.  *See* 22 S.W.3d

---

[9]  A "permit" means a "license, certificate, approval, registration, consent, permit, or other form of authorization required by law, rule, regulation, order, or ordinance that a person must obtain to perform an action or initiate, continue, or complete a project for which the permit is sought." *See* Tex. Loc. Gov't Code Ann. § 245.001(1) (West Supp. 2003).

[10]  We find it unnecessary to address whether section 245.002(d) in its entirety amounts to an impermissible delegation of legislative powers.  The relevant portion of section 245.002(d) deals with "subdivision Plat Notes."  Whether and to what extent the remaining portions of (d) are unconstitutional is not relevant to this appeal.  Were those portions of the statute unconstitutional, our mandate would have been to strike those portions and save the remainder — the remainder being the section dealing with "subdivision Plat Notes." *See Quick v. City of Austin*, 7 S.W.3d 109, 115 (Tex. 1998).

868, 875 (Tex. 2000). The statute allowed private landowners, owning 500 contiguous acres or more, to designate their property as "water quality protection zones." *See id*. at 870. The legislature intended the statute to relieve certain landowners from municipal "regulatory chaos." *See id*. Landowners designating 500 to 1000 acres had to seek approval for their water quality plan with the Texas Natural Resource Commission ("TNRCC") while landowners designating more than 1000 acres were not required to seek TNRCC pre-approval. *See id* at 871. A plan had to conform with one of two general objectives, (1) maintaining background levels of water quality in waterways; or (2) capturing and retaining the first 1.5 inches of rainfall from developed areas, plus state and federal law. *See id*. Once designated, the water quality zones were not subject to municipal land and water use regulations. *See id*. at 872. The supreme court held the statute unconstitutional on the grounds it delegated legislative power to private landowners by allowing them to decide whether and how to create their own water quality regulations, make their own rules, "ascertain conditions upon which the statute may operate[,]" and "exempt themselves from the enforcement of municipal regulations.". *See id* at 876.

The supreme court went on to make a key distinction that we believe is conclusive on the delegation issue. In addressing the dissent, the majority distinguished delegations which allow private parties "to choose between two distinct regulatory schemes" versus delegations which allow private parties "to *create* part of the regulatory scheme that they choose." *See id*. at 879 (emphasis in original). We think this distinction is instructive in this case. Here, the Legislature has allowed a private landowner to *choose* between two regulatory schemes: the one applicable at the time of the original application to subdivide and the one indicated in the subdivision plat. The

11

landowner does not *create* either regulatory scheme—both, in this instance, were not the product of private interests bu the exercise of the City's lawfully delegated power to regulate land use. The developer is held to an election between two regulatory schemes. While, in some respects, the developer is allowed to "ascertain conditions upon which existing laws may operate," the choice is limited to one of two regulatory schemes, both of which were passed pursuant to a municipality's lawfully delegated authority. Because section 245.002(d) allows the developer to choose between two distinct regulatory schemes but does not allow the developer to create the scheme, it is not a delegation of legislative power.

## ESTOPPEL

Even though in finding section 245.002(d) constitutional, we have found an independent legal reason to uphold the trial court's judgment, we believe there is a second independent legal basis supporting the judgment. The trial court held that the city was estoped from denying the validity of Plat Note 6 because the City had accepted Garza's dedication of property. In reply, appellant argues that a city may not be estopped in the exercise of its governmental capacity. *See City of Hutchins v. Prasifka*, 450 S.W.2d 829, 836 (Tex. 1970); *City of Corpus Christi v. Gregg*, 289 S.W.2d 746, 750 (Tex. 1956); *City of San Angelo v. Deutsch*, 126 Tex. 532, 91 S.W.2d 308, 309 (Tex. 1936); *see also City of San Marcos v. R.W. McDonald*, 700 S.W.2d 674, 676 (Tex. App.—Austin 1985, no writ). The general rule, as argued by appellants, however, has an exception where a city has received a substantial benefit as a result of its own mistake. In *City of San Angelo*, Deutsch loaned money to a third party who gave Deutsch a note and deed of trust on the property.

12

*See* 91 S.W.2d 308. Before making the loan, though, Deutsch checked the county tax records for tax liens on the property. *See id*. Finding none, Deutsch made the loan. *See id*. Upon default by the borrower, Deutsch realized the county tax records were wrong and that the property was encumbered by unpaid taxes. *See id*. at 309. Deutsch argued that the city was estopped from asserting a claim for the unpaid taxes because of his reliance upon the city's error. *See id*. The supreme court held that a city could not be estopped by the negligence of its officials in the exercise of its governmental function when the city has received no benefit from the error. *See id*. The court said

> The opinion is expressed in a number of decisions that a city may be estopped even when it is acting in its public [governmental] capacity if it has received or accepted benefit from the transaction. (Citations omitted). In such case exception is properly made to the general rule which has been discussed, because there is added to the equities existing in favor of the individual on account of his reliance and injury the established and compelling equitable principle that the city may not, after having accepted benefit from the unauthorized act, repudiate it so far as it imposes an obligation upon it or is disadvantageous to it. *Doty v. Barnard*, 92 Tex. 104, 107, 47 S.W. 712; 17 Tex. Jur. pp. 135, 136, s 7. This exception is not applicable here because the city received no benefit from the unauthorized entries made in the tax records.

*See id*. at 311-12. In *Doty v. Barnard*, the supreme court said "[a] person cannot accept and reject the same instrument, or, having availed himself of it as to part, defeat its provisions in another part," 92 Tex. 104, 47 S.W. 712, 713-14 (Tex. 1898) (quoting Herman on Estoppel and Res Judicata). Again, this exception to the general rules applies even where the city is acting in its governmental capacity. *See Deutsche*, 91 S.W.2d at 312; *Gregg*, 289 S.W.2d at 750-51; *see also Robert v. Haltom City*, 543 S.W.2d 75, 80 (Tex. 1976) ("The court's equitable power to prevent injustice must not be

13

frustrated by rules of law that limit or preclude the responsibility of the city for the conducts of its officers."). While we acknowledge that the applicability of estoppel against municipalities is rare, we conclude that it would be manifestly unjust for the City to retain the benefits of its mistake yet avoid its obligations. The City argues that Garza is prohibited from developing his property pursuant to the Plat Notes because the Commission had no authority to approve a subdivision plat that did not conform to the applicable land use regulations in place at the time the application to subdivide was filed. However, we find that it would be manifestly inequitable for the City to retain the land Garza donated so that he could take advantage of transfer credit provisions available only under the CWO yet deny him the benefit of developing under the CWO.

## ATTORNEY'S FEES

Appellant asks that we reverse the award of attorney's fees provided we find in their favor. The award of attorney's fees is discretionary and cannot be reversed on appeal absent a clear abuse of discretion. *See Texas Dept. of Public Safety v. Moore*, 985 S.W.2d 149, 157 (Tex. App.—Austin 1998, no pet.). A trial court abuses its discretion when it acts without regard to guiding legal principles or supporting evidence. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Since we have affirmed the legal basis supporting the trial court's judgment, we affirm the award of attorney's fees. *See Steel v. Wheeler*, 993 S.W.2d 376, 381 (Tex. App.—Tyler 1999, pet. denied) (holding that the award of attorney's fees to the prevailing party in a declaratory judgment action is proper).

14

## CONCLUSION

There are two independent legal bases supporting the trial court's judgment in Garza's favor. We hold that section 245.002(d)'s reference to "Plat Notes" does not create an unconstitutional delegation of legislative power to a private entity. Further, we hold that the City is estopped to deny the validity of Plat Note 6 because it accepted Garza's dedication of property. We affirm the trial court's judgment.

_____

David Puryear, Justice

Before Justice Kidd, Justices B. A. Smith and Puryear

Affirmed

Filed: