**CITY OF WHITE SETTLEMENT, Texas, Petitioner,**

v.

**SUPER WASH, INC., Respondent.**

**No. 04–0340.**

Supreme Court of Texas.

Argued April 13, 2005.

Decided March 3, 2006.

Michael R. Burkett, Garrett & Burkett, Fort Worth, for petitioner.

Hal R. Ray Jr., Pope, Hardwicke, Christie, Harrell, Schell & Kelly, L.L.P., Fort Worth, for respondent.

Chief Justice JEFFERSON delivered the opinion of the Court.

Super Wash, Inc., a car wash business, is seeking to estop the City of White Settlement from enforcing an ordinance that requires Super Wash to maintain a continuous fence along one side of its property. On competing motions, the trial court granted summary judgment for the City. The court of appeals reversed and remanded, holding that issues of material fact precluded summary judgment. We conclude that, under the circumstances pre-

sented, the City cannot be estopped from enforcing its zoning ordinance. We reverse the court of appeals' judgment in part and render judgment for the City.

## I

## Background

Super Wash's property was originally zoned for multi-family housing but was rezoned in 1986 for commercial use. Prior to that rezoning, area residents encouraged the City to impose restrictions on the commercial use to minimize vehicular traffic in their neighborhood. The City's ordinance contained language designed to meet those concerns:

> This change of zoning is expressly conditioned upon the owner and/or occupant, now or later, of this property constructing and thereafter maintaining a six-foot wooden privacy fence with brick columns on Longfield [Drive].[1]

City of White Settlement, Tex., Ordinance No. 837–86 (March 25, 1986) (the Ordinance). The Ordinance also contained a reversionary clause providing that, if the owner or occupant did not erect and maintain the fence, the property would revert to multi-family housing use. *Id.*

Super Wash was not aware of the Ordinance when it purchased the property in August 2000. At the start of construction, Super Wash submitted its site plan to the City for approval. The plan called for a curb cut and exit onto Longfield Drive and did not provide for a privacy fence separating the car wash from the neighborhood. Because the City's zoning map omitted any reference to the fence requirement, a City building official mistakenly approved Super Wash's site plan and issued a building permit on February 8, 2001. Within a week of the permit's issuance, residents in the abutting neighborhood brought the Ordinance to the City's attention and insisted that the car wash comply with it. On February 12, 2001, the City informed Super Wash that it was required to build a fence along Longfield Drive. On March 1, after construction was forty-five percent complete, the City informed Super Wash that it must also remove the planned exit onto Longfield Drive in accordance with the City's interpretation that the Ordinance required a continuous fence. Super Wash amended its site plan and, under protest, completed construction in line with the City's interpretation.

■ Super Wash sued the City, claiming that the Ordinance: (1) was not uniformly applied to all commercially zoned property, (2) constituted impermissible contract zoning,[2] and (3) included a reversionary clause that impermissibly delegated the City's legislative power. Super Wash argued alternatively that the City should be estopped from enforcing the Ordinance. Both parties moved for summary judgment. The trial court granted the City's motion and denied Super Wash's motion. With attorney's fees the only remaining issue, the parties filed a joint motion for final judgment, which was granted.

Super Wash appealed, and the court of appeals affirmed the trial court on the uniformity and contract zoning issues. 131

1. Longfield Drive separates the commercial property from the residential neighborhood.

2. "Contract zoning" occurs when a governmental entity, such as a city, enters into a binding contract in which it promises to zone land in a certain way in exchange for a landowner's promise to use the land in a particular manner. 131 S.W.3d 249, 257. Courts have held that contract zoning is invalid because, by entering into such agreements, the city impermissibly abdicates its authority to determine proper land use, effectively bypassing the entire legislative process. *Id.* (citing *City of Arlington v. City of Fort Worth,* 844 S.W.2d 875, 878 (Tex.App.—Fort Worth 1992, writ denied)). We have never addressed this issue, and it is not necessary to do so here.

S.W.3d 249, 257–59. Super Wash has not contested those holdings. The court reversed and rendered judgment that the reversionary clause was void and severable. *Id.* at 260–61. The City does not contest that holding. As to the estoppel issue, the court held there were issues of material fact regarding whether the City official's acts were authorized, whether this was the type of case that required estoppel, and whether the City would be prevented from exercising its governmental functions if it were estopped from enforcing the Ordinance. *Id.* Accordingly, the court of appeals reversed the trial court's judgment and remanded the case for trial. *Id.* at 261. We granted the City's petition for review to determine whether the court of appeals erred in remanding the estoppel issue. 48 Tex. Sup.Ct. J. 454 (Mar. 14, 2005).

## II

## Discussion

We have long held that a city cannot be estopped from exercising its governmental functions,[3] but have not thoroughly presented the reasons for that settled rule. *See City of Hutchins v. Prasifka,* 450 S.W.2d 829, 835 (Tex.1970) (city not estopped from enforcing zoning restrictions); *Rolison v. Puckett,* 145 Tex. 366, 198 S.W.2d 74, 77 (1946) (city not estopped from collecting taxes). In general, the rule derives from our structure of government, in which the interest of the individual must at times yield to the public interest and in which the responsibility for public policy must rest on decisions officially authorized by the government's representatives, rather than on mistakes committed by its agents. *See City of San Angelo v. Deutsch,* 126 Tex. 532, 91 S.W.2d 308, 310 (1936) ("[T]he city's public or governmental business must go forward, unimpeded by the fault, negligence or frailty of those charged with its administration.").

Decisions from the U.S. Supreme Court elaborate on these themes, and we find it useful to mention a few here. This line of cases makes clear that "equitable estoppel will not lie against the Government as against private litigants." *Office of Personnel Mgmt. v. Richmond,* 496 U.S. 414, 419, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (citing *Lee v. Munroe & Thornton,* 11 U.S. (7 Cranch) 366, 3 L.Ed. 373 (1813), *The Floyd Acceptances,* 74 U.S. (7 Wall.) 666, 19 L.Ed. 169 (1869), and *Utah Power & Light Co. v. United States,* 243 U.S. 389, 408–09, 37 S.Ct. 387, 61 L.Ed. 791 (1917)); *see also Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). One reason for this is that barring estoppel helps preserve separation of powers; legislative prerogative would be undermined if a government agent could—through mistake, neglect, or an intentional act—effectively repeal a law by ignoring, misrepresenting, or misinterpreting a duly enacted statute or regulation. *See Richmond,* 496 U.S. at 428, 110 S.Ct. 2465 (noting that "[i]f agents of the Executive were able, by their unauthorized oral or written statements to citizens, to obligate the Treasury for the payment of funds, the control over public funds that the [Appropriations] Clause reposes in Congress in effect could be transferred to the Execu-

3. The same does not hold true, however, when a city is performing its proprietary functions. *See Gates v. City of Dallas,* 704 S.W.2d 737, 739 (Tex.1986) (defining proprietary functions as "those functions performed by a city, in its discretion, primarily for the benefit of those within the corporate limits of the municipality" and holding that proprietary functions subject cities to the same duties and liabilities as those incurred by private parties); *City of Corpus Christi v. Gregg,* 155 Tex. 537, 289 S.W.2d 746, 750 (1956) (city acted within its proprietary capacity when it entered into an oil and gas lease and could therefore be estopped from later challenging the validity of the lease).

tive"). Additionally, the interests of an individual seeking to estop a governmental entity must at times yield to the general public's interest in a government that is not encumbered by the threat of unlimited liability. *See Richmond,* 496 U.S. at 434, 110 S.Ct. 2465 ("[T]he inevitable fact of occasional individual hardship cannot undermine the interest of the citizenry as a whole."). Finally, the Supreme Court has noted that barring estoppel against the federal government protects the public fisc. *See id.* at 433, 110 S.Ct. 2465 ("[O]pen[ing] the door to estoppel claims would only invite endless litigation over both real and imagined claims of misinformation by disgruntled citizens, imposing an unpredictable drain on the public fisc.").

Not unlike the U.S. Supreme Court, we have held that the unauthorized act of a government official cannot estop a city's enforcement of a zoning ordinance. *See Prasifka,* 450 S.W.2d at 836; *City of Amarillo v. Stapf,* 129 Tex. 81, 101 S.W.2d 229, 232 (1937); *see also Edge v. City of Bellaire,* 200 S.W.2d 224, 228 (Tex.Civ.App.—Galveston 1947, writ ref'd). In *Prasifka,* for example, the property in dispute was zoned for residential use, but the city's planning commission passed a resolution changing the use to manufacturing. 450 S.W.2d at 834. Because the resolution was not a proper means of changing the land use and the city never enacted a new zoning ordinance, the land remained officially zoned for residential use. *Id.* at 833. Despite this, a city worker improperly changed the city's zoning map to reflect a change to manufacturing use. *Id.* at 834. Relying on the revised map, Prasifka purchased the land. *Id.* When the city attempted to enforce the residential zoning classification, Prasifka argued that the city should be estopped from contesting the validity of the resolution that changed the zoning to manufacturing. *Id.* at 833. We held that the city could not be estopped from enforcing its zoning laws based on the unauthorized alteration of the zoning map. *Id.* at 835–36.

However, we also found "authority for the proposition that a municipality may be estopped in those cases where justice requires its application, and there is no interference with the exercise of its governmental functions." 450 S.W.2d at 836 (citing *City of Dallas v. Rosenthal,* 239 S.W.2d 636 (Tex.Civ.App.—Dallas 1951, writ ref'd n.r.e.)). We cautioned that this exception is available "only in exceptional cases where the circumstances clearly demand its application to prevent manifest injustice." *Id.* The court, not the jury, determines whether the exception applies. *See Burrow v. Arce,* 997 S.W.2d 229, 245 (Tex.1999) (courts must determine "the expediency, necessity, and propriety of equitable relief"). This case presents an occasion to clarify the exception and reiterate its limited applicability.

## A

## Estoppel When "Justice Requires"

Super Wash argues that the exception articulated in *Prasifka* should apply here, as this is a case in which justice requires estoppel. We have applied the exception in only one circumstance. In *Roberts v. Haltom City,* we held that a city could be estopped from enforcing a law that required a party bringing suit against the city to file a notice of claim within thirty days of injury. *Roberts,* 543 S.W.2d 75, 80 (Tex.1976). Roberts, the party seeking to estop the city from enforcing the notice of claim rule, presented evidence that city officials made misleading statements to her that led her to believe her claim would be "taken care of" and that the notice requirement was waived. *Id.* at 76–77. We held that whether Roberts reasonably relied on the misleading statements presented fact issues that pre-

cluded summary judgment. *Id.* at 80. Under those limited circumstances, the case presented an appropriate instance in which to recognize the exception articulated in *Prasifka. Id.* We made it clear, however, that we were *not abandoning* the general rule that a city cannot be estopped from performing its governmental functions. *Id.* Ten years after *Roberts,* we again held that the misleading statements of a city official could serve to estop a city from enforcing a notice of claim provision. *City of San Antonio v. Schautteet,* 706 S.W.2d 103, 105 (Tex.1986) (holding that "summary judgment is improper where there are genuine issues of material fact whether a city, through its officials, led the claimant to believe no further steps needed to be taken until the city completed its investigation").

*Roberts* and *Schautteet* illustrate the types of cases that may fall under the "justice requires" exception. In both, there was evidence that city officials may have affirmatively misled the parties seeking to estop the city and that the misleading statements resulted in the permanent loss of their claims against the cities. Evidence that city officials acted deliberately to induce a party to act in a way that benefitted the city but prejudiced the party weighs in favor of applying the exception articulated in *Prasifka. See, e.g., City of Austin v. Garza,* 124 S.W.3d 867, 875 (Tex.App.—Austin 2003, no pet.) (city that received a direct donation of land in exchange for land subject to an erroneous plat note could be estopped from later denying the validity of the plat note). Additionally, the complaining parties in *Roberts* and *Schautteet* would have been completely denied relief had the cities not been estopped, because only an equitable remedy could revive their otherwise extinguished claims.

■ We are not persuaded that this is an exceptional case in which justice requires estoppel. Super Wash is seeking to estop the city from enforcing the fence requirement so that it can build a second entrance/exit to assist with traffic flow. The business has been operating for years without this second entrance/exit, and there is nothing in the record to indicate that it is necessary for its continued operation. This case is unlike *Roberts* or *Schautteet,* in which the party seeking to estop the city would have been *completely* denied relief had estoppel not applied. *See Roberts,* 543 S.W.2d at 80; *Schautteet,* 706 S.W.2d at 104. Additionally, there are other remedies available to Super Wash—such as seeking a variance or a repeal of the Ordinance—that it has yet to pursue. Justice may require estoppel if that is the only available remedy; conversely, the existence of alternative remedies weighs strongly against the doctrine.

Moreover, while it is true the City issued the building permit in error, the Ordinance was a matter of public record and discoverable by Super Wash before it purchased the lot. *See Davis v. City of Abilene,* 250 S.W.2d 685, 688 (Tex.Civ.App.—Eastland 1952, writ ref'd) (party seeking to estop city's enforcement of zoning ordinance charged with constructive notice of the ordinance and could therefore not rely on building permit issued by the city in violation of the law). The evidence also demonstrates that the City acted quickly—within days of learning of its error—to notify Super Wash of the Ordinance. *Cf. Krause v. City of El Paso,* 101 Tex. 211, 106 S.W. 121, 124 (1907) (city estopped after failing to enforce law for twenty years).

Finally, while Super Wash argues that the City should be estopped because it benefitted from adding a commercial business to its tax base due to the erroneously issued building permit, this benefit is simply too attenuated to establish grounds for equitable relief. This case is unlike *Garza,*

in which the city received a large, direct donation of land in exchange for land that was subject to an erroneous plat note. *Garza,* 124 S.W.3d at 874. There, the court held it would be inequitable to allow a city to retain the benefit of donated land while denying the other party the right to enforce the note, upon which he relied in making the exchange. *Id.* at 875. In this case, however, there is no evidence that the city received any direct benefit from Super Wash in exchange for the erroneously issued permit.

Therefore, Super Wash does not present an exceptional case in which justice requires estoppel.

### B

### Interference with Governmental Functions

As we noted in *Prasifka,* even if justice requires estoppel, a city will not be estopped if doing so would interfere with its ability to perform its governmental functions. 450 S.W.2d at 836. Here, estopping the City from enforcing the Ordinance will prevent it from freely performing at least one of its governmental functions.

This is our first opportunity to clarify what it means to "interfere" with a governmental function. We first note that precluding a city from performing a specific governmental function in a single instance is not *per se* interference with its governmental functions. Otherwise, every attempt to estop a city would be considered interference with a governmental function, and the exception stated in *Prasifka* could never apply. Rather, in determining whether a case presents an appropriate instance in which to apply the exception, the relevant inquiry is whether estopping the city in a single instance will bar the future performance of that governmental function or impede the city's ability to perform its other governmental functions.

In conducting this inquiry, the court should first determine what municipal governmental functions, if any, would be affected by estopping the city. We define "governmental functions" generally as those that "are public in nature and performed by the municipality 'as the agent of the State in furtherance of general law for the interest of the public at large.'" *Gates v. City of Dallas,* 704 S.W.2d 737, 738–39 (Tex.1986) (quoting *City of Crystal City v. Crystal City Country Club,* 486 S.W.2d 887, 889 (Tex.Civ. App.—Beaumont 1972, writ ref'd n.r.e.)). We have previously determined that certain functions are governmental in nature. *See, e.g., City of LaPorte v. Barfield,* 898 S.W.2d 288, 291 (Tex.1995) (the hiring and firing of city employees); *City of Arlington v. Lillard,* 116 Tex. 446, 294 S.W. 829, 830 (1927) (traffic control). Other examples of governmental functions can be found in a 1987 amendment to the Tort Claims Act in which the Legislature specifically defined the phrase.[4] The statute supersedes the common-law definition of "governmental function" only if a claim falls under the Tort Claims Act;[5] howev-

4. Determining whether a function is governmental in nature is critical under the Tort Claims Act, because the Act only applies when a city is acting in its governmental capacity; the Act does not apply when a city acts in its proprietary capacity. *See* Tex. Civ. Prac. & Rem. Code §§ 101.0215(a)-(b); *see also* Tex. Const. art 11, § 13 (providing that the Legislature may define municipal functions as either governmental or proprietary as well as reclassify a function already assigned a certain classification under prior statute or common law).

5. The Act's general definition of "governmental function" is very similar to the common law definition: "those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." Tex. Civ. Prac.

er, the statute is helpful here because it contains a nonexclusive list of specific, municipal functions that the legislature has deemed governmental.[6] *See* TEX. CIV. PRAC. & REM. CODE § 101.0215(a). Generally, a court may estop a city only if it would not interfere with the city's ability to perform any act that the Legislature has deemed, or that the court determines to be, a municipal governmental function.[7]

More specifically, in the context of estopping a city's enforcement of a duly enacted ordinance, the court should consider whether estoppel will affect public safety, bar future enforcement of the ordinance, or otherwise impede the city's ability to serve the general public. A city should not be estopped if doing so would hinder its ability to ensure public safety. *Cf. City of Fredericksburg v. Bopp,* 126 S.W.3d 218, 223 (Tex.App.—San Antonio 2003, no pet.) (city could be estopped from enforcing a sign ordinance when there was no evidence that doing so would create a public safety hazard). The city may be estopped, however, if doing so will not frustrate the purpose for which the ordinance was enacted nor bar the city from enforcing the ordinance in the future. *See id.* (no evidence that estopping city from enforcing sign ordinance would give party an unfair business advantage or create a safety hazard, which were the two concerns the ordinance was enacted to address); *see also Dallas County Flood Control Dist. No. 1 v. Cross,* 815 S.W.2d 271, 284 (Tex.App.—Dallas 1991, writ denied) (city could be estopped, even though it could cost the city money, if doing so created no legal barrier to its performance of its governmental functions in the future).

In this case, the court of appeals held that fact issues exist concerning whether the City's ability to perform its governmental functions would be impaired if it was estopped from barring the Longfield Drive exit. 131 S.W.3d at 260. The evidence demonstrates, however, that estopping the City would impede the City's attempt to answer the concerns of residents in the neighborhood abutting the commercially zoned property on which Super Wash now stands. The residents sought to have a fence erected along Longfield Drive in order to prevent commercial traffic from directly accessing the residential street. Assuming without deciding that estopping the City from enforcing the Ordinance would leave the City free to enforce other zoning laws, it would nevertheless preclude the City from employing

& REM. CODE § 101.0215(a). Thus, the main effect of the 1987 amendment was to classify some functions as governmental that courts previously deemed proprietary. *Mitchell v. City of Dallas,* 855 S.W.2d 741, 744 (Tex. App.—Dallas 1993) (noting that while under common law the operation of parks and zoos was deemed proprietary, the Act reclassified it as a governmental function), *aff'd,* 870 S.W.2d 21 (Tex.1994). In Tort Claims Act cases, the judiciary retains the ability to determine whether a function is governmental or proprietary in nature, so long as it is not specifically enumerated as a governmental function under section 101.0215(a). *City of Houston v. Sw. Concrete Const., Inc.,* 835 S.W.2d 728, 731 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

6. The list includes "street construction and design," "regulation of traffic," and "zoning, planning, and plat approval." TEX. CIV. PRAC. & REM. CODE §§ 101.0215(a)(3), (a)(21), (a)(29).

7. For example, while we did not reach this issue in *Roberts* and *Schautteet*—the only cases in which we have applied the exception articulated in *Prasifka*—there is no indication that estopping the enforcement of a notice of claim requirement (the ordinance at issue in those cases) in a single instance affects a city's ability to perform its other government functions or precludes the city from enforcing the notice requirement against other individuals in the future. *See Roberts,* 543 S.W.2d at 80; *Schautteet,* 706 S.W.2d at 105.

its chosen method of regulating traffic along Longfield Drive and, thereby, remove some of its discretion in determining how to best protect the public's safety, both of which are classic governmental functions. *See* Tex. Civ. Prac. & Rem. Code § 101.0215(a) (governmental functions are those exercised in the general public's interest and include the ability to regulate traffic); *Lillard,* 294 S.W. at 830 (traffic control is governmental in nature). Because estopping the City would interfere with its performance of its governmental functions, the exception stated in *Prasifka* does not apply.

## III

## Conclusion

We hold that the court of appeals erred in reversing and remanding on the estoppel question. We reverse its judgment in part and render judgment for the City. Tex. R. App. P. 60.2(c).