# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 18, 2010

No. 09-50455

Lyle W. Cayce
Clerk

CITY OF EL PASO, TEXAS,

Plaintiff - Appellee

v.

EL PASO ENTERTAINMENT, INC., A Texas Corporation, doing business as
Foxy's Nightclub, doing business as Foxy's; JEDJO, INC., A Texas
Corporation, doing business as The Lamplighter, doing business as
Lamplighter Lounge; CR&R, INC., A Texas Corporation; EL TAPATIO, INC.,
A Texas Corporation; Y&F, INC., A Texas Corporation; UNKNOWN JOHN
DOE RELATED BUSINESS ENTITIES WHICH OPERATE AND/OR OWN
THE BUSINESSES KNOWN AS FOXY'S NIGHTCLUB AND
LAMPLIGHTER LOUNGE,

Defendants - Appellants

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:07-CV-00380-KC

Before BARKSDALE, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[*]

At issue is the continued vitality of a 1995 agreed judgment and
permanent injunction, entered into by the City of El Paso, Texas, and two

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 09-50455

sexually-oriented businesses (SOBs), Foxy's Nightclub and Lamplighter Lounge, operated by Appellants El Paso Entertainment, Inc., and JEDJO, Inc., respectively. In 2007, the City filed a declaratory judgment action on whether that agreed judgment precludes enforcement of a 2007 zoning ordinance against the two SOBs. The district court held the 1995 agreed judgment is no longer in effect, allowing the City to enforce that ordinance. AFFIRMED in PART; VACATED in PART; and REMANDED.

I.

In 1994, El Paso Entertainment sued the City in federal district court, challenging the constitutionality of a zoning ordinance regulating SOBs. The district court granted El Paso Entertainment's motion for partial summary judgment and allowed the proceedings to continue on the issue of damages. Before that issue could be resolved, the City and El Paso Entertainment entered into the 1995 agreed judgment, precluding the City from enforcing any SOB ordinances against either Foxy's Nightclub or Lamplighter Lounge for as long "as the businesses remain[ed] in operation at their current locations *by their current owners and operators*". (Emphasis added.) (The 1995 agreed judgment also required the City to pay El Paso Entertainment $15,000 in damages.)

When the 1995 agreed judgment was entered, El Paso Entertainment operated Foxy's Nightclub and subleased the physical property on which it is located from CR&R, Inc. Similarly, in 1995, JEDJO operated Lamplighter Lounge and leased the property from CR&R, Inc. At that time, Mark Diedrich was the sole shareholder of both El Paso Entertainment and JEDJO. Shortly after entry of the 1995 agreed judgment, however, Diedrich sold all of his shares in El Paso Entertainment and JEDJO to Dean Reiber.

In 2007, the City enacted a new licensing and regulatory ordinance, Ordinance 016624, which imposed licensing requirements and conduct regulations on SOBs. That year, the City filed this separate declaratory

2

No. 09-50455

judgment action in the same federal district court in which the 1994 action was filed. This separate action sought a declaration that the 1995 agreed judgment did not bar enforcement of the 2007 ordinance against Foxy's Nightclub and Lamplighter Lounge. The City amended its complaint to obtain a declaratory judgment that the 1995 agreed judgment is no longer in effect because Diedrich's sale to Reiber in 1996 of all of the shares in El Paso Entertainment and JEDJO constituted a change in the businesses' "current owners and operators".

The parties, *inter alia*, filed cross-motions for summary judgment. The district court denied Appellants' motion and granted the City's. In denying Appellants' motion, the court held that laches, raised by Appellants, was inapplicable. In granting summary judgment to the City, the court declared the 1995 agreed judgment no longer in effect because the stock sale in 1996 resulted in a change in ownership. *City of El Paso, Tex. v. El Paso Entm't, Inc.*, No. 07-CV-00380-KC (W.D. Tex. 11 May 2009) (order granting summary judgment).

In reaching its change-of-ownership ruling, the district court applied the definitions of "owner" and "operator" contained in § 20.08.080 of the El Paso Municipal Code. That section, which governs zoning ordinances, defines "operator" as "[t]he manager or other natural person principally in charge of an adult business regulated in this section" and "owner or owners" of a corporation as "all officers, directors and persons holding ten percent (10%) of the outstanding shares". Because the owner of all of the shares of both corporations changed, the district court concluded that a change in ownership had occurred and, as a result, the 1995 agreed judgment was no longer in effect. *City of El Paso, Tex.*, No. 07-CV-00380-KC (W.D. Tex. 11 May 2009) (order granting summary judgment).

## II.

Concerning the summary judgment, Appellants present three issues. They claim the district court: lacked subject matter jurisdiction, asserting that, under

No. 09-50455

Federal Rule of Civil Procedure 60(b), an action to modify a judgment must be brought in the same proceeding as the original judgment; erred in ruling against laches; and, incorrectly interpreted the 1995 agreed judgment to conclude that a change in ownership resulted from the stock sale.

A.

Prior to ruling on summary judgment, the district court held subject matter jurisdiction exists. *City of El Paso, Tex. v. El Paso Entm't, Inc.*, 535 F. Supp. 2d 813, 820 (W.D. Tex. 2008). No authority need be cited for this issue being one of *de novo* review.

The City filed this action under the Declaratory Judgment Act, 28 U.S.C. § 2201. That Act, however, does not confer federal jurisdiction; rather, the parties must provide an independent basis for jurisdiction. *E.g.*, *Comstock Oil & Gas Inc. v. Ala. & Coushatta Indian Tribes of Tex.*, 261 F.3d 567, 573 n.5 (5th Cir. 2001).

Along that line, a federal court has ancillary jurisdiction to interpret a prior federal court order where the effect of such an interpretation would, *inter alia*, nullify or prevent future enforcement of the original federal judgment. *Peacock v. Thomas*, 516 U.S. 349, 357 (1996) (holding the exercise of ancillary jurisdiction has been limited to "attempts to execute, or to guarantee eventual executability of, a federal judgment"); *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 960 F.2d 1286, 1292 (5th Cir. 1992) ("It is well settled that a federal district court can exercise ancillary jurisdiction over a second action in order to secure or preserve the fruits and advantages of a judgment or decree rendered by that court in a prior action. Such jurisdiction is appropriate where the effect of an action filed in state court would effectively nullify the judgment of a prior federal action.") (quotation marks, alteration, and citations omitted); *Peter Bay Homeowners Ass'n, Inc. v. Stillman*, 294 F.3d 524, 533 (3d Cir. 2002) ("Clearly, the District Court had [ancillary] jurisdiction to interpret the meaning and scope

4

of the various obligations imposed by the previous 1975 District Court upon the Peter Bay properties."). The City's action invoked the ancillary jurisdiction of the district court, vesting it with jurisdiction.

Appellants, however, claim subject matter jurisdiction is lacking, asserting that, under Rule 60(b), this action must be pursued in the same action that produced the 1995 agreed judgment. Rule 60(b) articulates the grounds upon which a party may obtain relief from a final judgment, order, or proceeding. The Rule does *not* restrict the ability of the City to pursue the instant action. A party may file an independent declaratory judgment action to determine the rights of the parties pursuant to a prior federal court order. *See Royal Ins. Co. of Am.*, 960 F.2d at 1292. Such an action does not fall within Rule 60(b) because it is not an action to modify, vacate, or otherwise seek relief from a federal court order.

For this reason, Appellants' reliance on *Cook v. Birmingham News*, 618 F.2d 1149 (5th Cir. 1980), is misplaced. In *Cook*, plaintiff filed a motion to reconsider the entry of a consent decree three years after the judgment was entered. Our court stated: "[I]f [Rule] 60 is inapplicable, we know of no legal doctrine or rule of civil procedure that even arguably could have empowered a district court to hear, three years after entry of a consent decree that acts as a final judgment, a motion to reconsider the decree". *Id*. at 1152.

The present action is distinct, however; the City is *not* seeking relief from the 1995 agreed judgment through a motion to reconsider in the original proceeding. Instead, the instant action is to declare the rights of the parties *pursuant to* the 1995 agreed judgment. By its very nature, a declaratory judgment seeks to determine the rights of the parties as they currently exist; it does not involve the modification or vacation of a prior judgment. *See* 28 U.S.C. § 2201(a) (authorizing a federal court with proper jurisdiction to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought"). The City is seeking a

declaration that the 1995 agreed judgment—by its own terms and without action by the court—has ceased to be in effect because of the change in stock ownership. In short, the City was not required to employ Rule 60(b).  (We do not address whether the City could have pursued a Rule 60(b) motion in the original proceeding to obtain relief from the 1995 agreed judgment.)

Accordingly, subject matter jurisdiction existed for the district court to render declaratory relief.

## B.

Appellants present two challenges to the summary judgment for the City, which held the 1995 judgment was no longer in effect.  A summary judgment is reviewed *de novo*, applying the same standards as the district court.  *E.g.*, *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005).  Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law".  FED. R. CIV. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party".  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When reviewing a summary judgment, all evidence is viewed in the light most favorable to the non-movant and all reasonable inferences are drawn in favor of the non-movant. *E.g.*, *Raby v. Livingston*, 600 F.3d 552, 557 (5th Cir. 2010) (citing *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 391 (5th Cir. 2009)).

## 1.

Appellants claim the district court erred in ruling against laches.  They assert that, because of laches, the City is barred from contending that the stock sale caused a change in ownership under the 1995 agreed judgment.   In that regard, Appellants maintain the City had actual knowledge of the stock sale in

1996 between Diedrich and Reiber, but unreasonably delayed in attempting to enforce the 2007 ordinance.

Laches is an affirmative defense; therefore, the party asserting it has the burden of proving its essential elements. *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex. 1964). Texas courts have recognized that "[t]he defense of laches is akin to that of estoppel". *Id*. Accordingly, Appellants must prove: "(1) unreasonable delay by one having legal or equitable rights in asserting them, and (2) a good faith change of position by another to his detriment because of the delay". *Id*.

The City maintains that laches is inapplicable to a governmental entity. The Texas Supreme Court has "long held that a city cannot be estopped from exercising its governmental functions". *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 773 (Tex. 2006). One important reason for this rule "is that barring estoppel helps preserve separation of powers; legislative prerogative would be undermined if a government agent could—through mistake, neglect, or an intentional act—effectively repeal a law by ignoring, misrepresenting, or misinterpreting a duly enacted statute or regulation". *Id*. (citing *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 428 (1990)).

A narrow exception exists, however, "where justice requires [the application of equitable estoppel], and there is no interference with the exercise of [the City's] governmental functions". *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 836 (Tex. 1970). In such instances, the doctrine of estoppel "is applied with caution and only in exceptional cases where the circumstances clearly demand its application to prevent manifest injustice". *Id*. In Texas, "[t]he court, not the jury, determines whether the exception applies". *Super Wash*, 198 S.W.3d at 774.

The Texas Supreme Court clarified recently that the exception is limited to instances where "city officials may have affirmatively misled the parties

seeking to estop the city and . . . the misleading statements resulted in the permanent loss of their claims against the cities". *Id*. at 775. In short, the defense may be allowed where justice requires estoppel and the party asserting the defense would otherwise be without a remedy. *Id*.

Even assuming that this action is the type where laches may be asserted against a city, Appellants have failed to sustain their burden of proof on the essential elements of the defense. As the district court ruled, Appellants have failed to introduce any evidence of undue prejudice or detrimental reliance. Appellants merely assert that they remodeled their facilities and made significant investments in reliance on the 1995 agreed judgment's continuing force. But they have not introduced any evidence of such improvements, let alone any evidence linking the improvements to the City's delay in attempting to enforce the zoning ordinances or contending that there was a "change of ownership".

Along that line, the only proof in the record supporting laches is the delay between the City's alleged receipt in 2003 of the Appellants' application for a mixed-beverage license to the Texas Alcoholic Beverage Control—which Appellants assert placed the City on notice of the change in ownership—and the City's filing this declaratory judgment action in 2007. In sum, the record is devoid of proof that the City's delay in filing the instant action caused Appellants to change their position in good faith. *Johnson*, 388 S.W.2d at 404. Therefore, summary judgment was proper against Appellants' laches claim.

2.

Finally, Appellants claim the district court erred by applying the definitions of "owner" and "operator" of a corporation, contained in § 20.08.080 of the El Paso Municipal Code, to interpret the 1995 agreed judgment. In that regard, interpretation of a consent decree is a question of law. *United States v. Chromalloy Am. Corp.*, 158 F.3d 345, 350 (5th Cir. 1998); *see also Dean v. City*

No. 09-50455

*of Shreveport*, 438 F.3d 448, 460 (5th Cir. 2006) (noting that consent decrees, which function like enforceable judicial orders, are construed under general principles of contract interpretation).   This court has recognized that "[c]ourts should not impose their own terms within a consent decree and should read consent decree terms by their plain meaning[s]".   *United States v. Alcoa, Inc.*, 533 F.3d 278, 286 (5th Cir. 2008).

Accordingly, we look first to the "four corners" of the agreed judgment and examine extrinsic evidence only if the agreed judgment is ambiguous. *Dean*, 438 F.3d at 460.   A judgment is "ambiguous when it is reasonably susceptible to more than one meaning, in light of surrounding circumstances and established rules of construction".   *Id.* at 460-61.

The relevant provision of the 1995 agreed judgment states:

The clubs known as Foxy's Nightclub and Lamplighter Lounge *shall be recognized as legal, non-conforming uses and shall be permanently grandfathered as such, for such period of time as the businesses remain in operation at their current locations by their current owners and operators. . . .* The parties recognize that the property located at 1111 Saddlebronc is currently leased by CR&R, Inc., and the property located at 9857 Montana Avenue is owned by CR&R, Inc., a Texas Corporation, and that this injunction applies to that business as the real party in interest in this lawsuit and the third-party beneficiary of this settlement agreement.   Thus, the phrase "remain in operation" as set forth above means that CR&R, Inc., will continuously maintain its ownership or leasehold interest in the subject properties and that the businesses shall remain open for business as adult businesses subject to the provisions of Chapter 20.62 [of the Zoning Ordinances] allowing for temporary closure for a short period of time.

The parties agree that the businesses in question may be considered a non-conforming use of the property in question as contemplated by Chapter 20.62 of the Zoning Ordinances *with the exception that 20.62.020(F) or any successor provision, shall not apply to these businesses*.   A copy of the applicable section of Chapter 20.62 is attached hereto and incorporated by reference herein as Exhibit A.

9

No. 09-50455

> The parties agree that all other provisions of the City Code which regulate health and safety requirements including but not limited to the Fire Code, Building Codes, parking regulations and general provisions of the Health Code, will remain applicable to the businesses in question.

(Emphasis added.)

The district court held that the terms "owners" and "operators" are unambiguous and clearly defined within the 1995 agreed judgment. In so doing, it reasoned that Chapter 20.62 of the El Paso Municipal Code was explicitly incorporated into the 1995 agreed judgment and that subsection (F) explicitly references § 20.08.020, which contains the definitions of "owner" and "operator". Accordingly, the district court applied the definition of "owner" contained in § 20.08.020: "all officers, directors and persons holding ten percent (10%) of the outstanding shares of a corporation". Based on that definition, the court concluded that a change in ownership occurred in 1996 when Reiber acquired all of the stock in El Paso Entertainment and JEDJO.

The phrase "owners and operators" in the 1995 agreed judgment is, however, ambiguous. First, the agreed judgment does not define either "owners" or "operators". Although the agreed judgment does incorporate portions of § 20.62, a zoning ordinance, it does so by *disavowing* its applicability. Indeed, the 1995 agreed judgment states that subsection § 20.62.020(F) will *not* be applied to the SOBs. Consequently, the 1995 agreed judgment did *not* explicitly incorporate the definitions of "owner" and "operator" contained in § 20.08.020.

Moreover, each side presents a reasonable interpretation of the terms. Appellants assert that the terms "owners and operators" refer to the corporations, El Paso Entertainment and JEDJO, that own and operate the SOBs. This interpretation has support in Texas law, which generally disfavors looking behind the corporation to its individual shareholders. Needless to say, a corporation maintains an identity distinct from its shareholders. *See* TEX. BUS.

10

No. 09-50455

CORP. CODE § 2.21 (2003) (limiting the method by which any shareholder can be held responsible for the acts of a corporation); TEX. BUS. ORG. CODE § 2.101(1) (2007) (granting corporations the power to sue and be sued in the corporate name, own property, enter into contracts, and conduct business); *Hoffman v. Dandurand*, 180 S.W.3d 340, 347 (Tex. App.–Dallas 2005) ("Generally, a corporation is a separate legal entity that insulates its owners or shareholders from personal liability.").

Conversely, the City asserts that the definitions of "owner" and "operator" contained in the zoning ordinance in Chapter 20.62 of the Muncipal Code should govern because the original action challenged the application of the zoning ordinance and was contemplated by the parties when the settlement agreement was formed. In sum, the plausibility of each party's interpretation highlights the ambiguity in the phrase "owners and operators".

As discussed, because the meaning of the terms "owners and operators" is ambiguous, we may look to extrinsic evidence. The district court, in the alternative, relied again on § 20.08.020 as extrinsic evidence of the meaning of these terms. But it is evident from the record that the parties did not fully develop the record because each side believed the terms were unambiguous for a different reason. Therefore, this matter is best resolved on remand by a full hearing to allow the parties to present extrinsic evidence and otherwise develop their positions. *See Dean*, 438 F.3d at 461 (finding terms in a consent decree ambiguous and remanding the case to the district court to develop the record with extrinsic evidence).

### III.

For the foregoing reasons, the summary judgment ruling against Appellants' laches claim is AFFIRMED; the summary judgment ruling that the 1995 agreed judgment is no longer in affect, based on the "owner and operator"

No. 09-50455

ruling, is VACATED; and this matter is REMANDED to district court for further proceedings consistent with this opinion.

No. 09-50455

PRISCILLA R. OWEN, Circuit Judge, dissenting.

Because I would affirm the district court's judgment, I respectfully dissent.

The Agreed Judgment excepts only the applicability of § 20.62.020(F) of the El Paso Municipal Code. The Agreed Judgment states twice that all other health and safety provisions of the El Paso Municipal Code remain in effect. At the time the Agreed Judgment was entered, § 20.08.080 of that Code defined (and has continued to define) who is considered an owner or operator of "an adult bookstore, adult motion picture theater or nude live entertainment club." The Agreed Judgment reflects that the 1995 dispute that led to its entry "involve[d] a dispute over application of certain provisions of the El Paso Municipal Code which regulate the operation of Adult Businesses within the City limits." The parties to the Judgment agreed that the non-conforming use of the properties at issue as adult businesses could continue "for such period of time as the businesses remain in operation at their current locations by their current owners and operators." I see no ambiguity in the Agreed Judgment. Section 20.08.080 of the Code applied, and it defined who are deemed owners or operators of an adult business. The owners and operators, as those terms are defined in § 20.08.080, changed, and therefore the Agreed Judgment, by its terms, ceased to "grandfather" the adult businesses.

I agree with the majority opinion's disposition of the other issues in this case. I note only that there is no evidence that city officials "affirmatively misled"[1] any of the Appellants, and this is an additional basis on which to conclude that the City is not estopped in this case.

---

[1] *See City of White Settlement v. Super Wash*, 198 S.W.3d 770, 775 (Tex. 2006).