**REVERSE and RENDER and Opinion Filed June 16, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-00730-CV

**CITY OF DALLAS AND THE BOARD OF ADJUSTMENT OF THE CITY OF DALLAS, Appellants**
**V.**
**PDT HOLDINGS, INC., AND PHILLIP THOMPSON HOMES, INC. D/B/A PHILLIP THOMPSON CUSTOM HOMES, Appellees**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-08484**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Garcia, and Kennedy
Opinion by Justice Garcia

The City of Dallas appeals the trial court's final judgment applying equitable estoppel to bar enforcement of a zoning ordinance against PDT Holdings, Inc. ("PDT"). In two related issues, the City argues the trial court erred in determining that equitable estoppel bars enforcement of the ordinance because this is not an exceptional case requiring departure from the general rule against estoppel. The City further argues that PDT failed to show the Board of Adjustment abused its discretion in denying a variance. As discussed below, we conclude this is not an exceptional case where manifest justice demands departure from the general rule precluding

estoppel against a municipality. We reverse the trial court's judgment and render judgment that PDT is not entitled to relief on its equitable estoppel claim.

## I. Background

This case arises from PDT's construction of a duplex townhome in Dallas (the "Project"). PDT's plans called for a thirty-six-foot-high structure. The City approved the plans and issued a permit for the Project on Oct. 17, 2017.

In November, 2017, PDT executed a contract to sell the townhome to residential purchasers. Construction continued without incident until January 2018.

In January, the city inspector cited PDT for noncompliance with code requirements for the height of the parapet wall. A stop work order was issued until PDT fixed the parapet height. There was no mention of the overall thirty-six-foot height of the building; the notice of noncompliance cited only the height of the parapet wall. Later that month, the City approved PDT's amended plans addressing the parapet wall. The amended plans still showed a thirty-six-foot overall height for the structure.

On April 23, 2018, the City issued a second stop work order stating that the Project did not comply with the City's Residential Proximity Slope (RPS) ordinance limiting the maximum height of the structure to twenty-six feet. The Project was ninety percent complete at the time.

On May 21, 2018, PDT appeared before the Board of Adjustment ("BOA") seeking a variance from the RPS ordinance. The BOA denied the variance without prejudice.

PDT applied for a variance again, and a second BOA hearing was held on June 18, 2018. Although the City staff recommended that the variance be approved, the BOA denied the variance without prejudice. The Project was ninety-five percent complete at the time.

PDT appealed the BOA decision, and the City filed a plea to the jurisdiction. An interlocutory appeal to our court followed. Our court's opinion concluded, inter alia, that the trial court had jurisdiction under TEX. GOV'T CODE ANN. § 211.011 and could consider PDT's equitable defensive theories.[1] The case was remanded to the trial court.

On remand, the trial court abated the case to remand to the BOA. The BOA conducted a third variance hearing on May 18, 2020. Again, the City recommended approval of the variance, and again, it was denied. The case was then returned to the trial court.

The trial court conducted a bench trial on PDT's third amended petition alleging the City was equitably estopped from enforcing the RPS ordinance. On

---

[1] *City of Dallas v. PDT*, No. 05-21-00018-CV, 2021 WL 3733059 (Tex. App.—Dallas Aug. 24, 2021, no pet.) (mem. op.), Pedersen, J., concurring, 629 S.W.3d 794.

conclusion, the court entered a final judgment in favor of PDT estopping the City from enforcing the ordinance in connection with the Project.[2] This appeal followed.

## I. Analysis

## A. Standard of Review and Applicable Law

Whether the equitable estoppel doctrine applies to bar the City's enforcement of the ordinance is a question of law. *See City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 774 (Tex. 2006). We review questions of law de novo. *Walker v. Anderson*, 232 S.W.3d 899, 908 (Tex. App.—Dallas 2007, no pet.).[3]

Generally, estoppel is based on the principle that "one who by his conduct has induced another to act in a particular manner may not be permitted to adopt an inconsistent position and thereby cause loss to another." *Fabrique v. Corman*, 796 S.W.2d 790, 792 (Tex. App.—Dallas 1990, writ denied). Equitable estoppel is established when: (1) a false representation or concealment of material facts, (2) is made with knowledge, actual or constructive, of those facts, (3) with the intention that it should be acted upon, (4) to a party without knowledge or means of obtaining knowledge of those facts, (5) who detrimentally relies on the representations. *See*

---

[2] The final judgment does not reverse the BOA's denials of the variance or in any way address these actions.

[3] PDT argues that because there are no findings of fact and conclusions of law, we imply all findings necessary to support the judgment. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 842 (Tex. 2000). While this is true, implied findings must have support in the record on a theory of law applicable to the case. *See Affordable Power, L.P. v. Buckeye Ventures, Inc.*, 347 S.W.3d 825, 830 (Tex. App.—Dallas 2011, no pet.). Contrary to what PDT seemed to suggest at oral argument, this does not mean we have *carte blanche* to craft a remedy based on a theory unsupported by the pleadings or imply findings that have no evidentiary support in the record.

*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex.1998).

The general rule is that when a governmental unit is exercising its governmental powers, it is not subject to estoppel. *City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835 (Tex. 1970). "[T]he rule derives from our structure of government, in which the interest of the individual must at times yield to the public interest and in which the responsibility for public policy must rest on decisions officially authorized by the government's representatives, rather than on mistakes committed by its agents." *Super Wash*, 198 S.W.3d at 773 (citing *City of San Angelo v. Deutsch*, 91 S.W.2d 308, 310 (1936) ("The city's public or governmental business must go forward, unimpeded by the fault, negligence, or frailty of those charged with its administration.")). "[B]arring estoppel helps preserve separation of powers; legislative prerogative would be undermined if a government agent could—through mistake, neglect, or an intentional act—effectively repeal a law by ignoring, misrepresenting, or misinterpreting a duly enacted statute or regulation." *Id.* at 774.

The Texas Supreme Court has recognized a very limited exception to the general rule. Specifically, the court has held that "[t]here is authority for the proposition that a municipality may be estopped in those cases where justice requires its application, and there is no interference with the exercise of its governmental functions." *Prasifka*, 450 S.W.2d at 836. This exception "is applied with caution and

only in exceptional cases where circumstances demand its application to prevent manifest injustice." *Id.; see also Super Wash, Inc*., 198 S.W.3d at 773.

## B.    Is This an Exceptional Case Where Justice Requires Application of Estoppel Against the City?

The City's first and third issues argue the trial court erred in applying the equitable estoppel doctrine against the City to bar enforcement of the RPS ordinance.[4] We therefore consider whether this is an exceptional case where justice requires departure from the general rule against estopping a municipality.

Our analysis is informed by the Texas Supreme Court's opinion in *Super Wash*. *See Super Wash, Inc*., 198 S.W.3d at 773. In that case, the court endeavored to clarify how courts should distinguish cases where justice requires estoppel from what is ordinarily regarded as the cost of doing business with the government. In so doing, the court "reiterated [the exception's] limited applicability." *See id*. at 774.

In *Super Wash*, a car wash business sought to estop a city from enforcing an ordinance requiring it to maintain a continuous fence on the side of its property on Longfield Drive. *Id*. at 771. The ordinance was adopted in connection with the rezoning of the property from residential to commercial use based on area residents' concerns regarding vehicular traffic in their neighborhood. *Id.* When the car wash

---

[4] The City's second issue argues PDT failed to show the BOA abused its discretion by rejecting PDT's applications for a variance. The City acknowledges, however, that the BOA's actions are not at issue here. We therefore reject the City's second issue. *See* TEX. R. APP. P. 33.1.

purchased the property, it was unaware of the ordinance and submitted a site plan for a curb cut and exit onto Longfield Drive. *Id*. The city mistakenly approved the permit but, within a week, after residents complained, informed the car wash that it had to remove the planned exit onto Longfield Drive. *Id*. Construction was forty-five percent complete at the time. *Id*.

In determining whether the circumstances warranted application of the limited estoppel exception, the *Super Wash* court examined *Roberts v. Haltom City*, 543 S.W.2d 75, 80 (Tex. 1976) and *City of San Antonio v. Schautteet*, 706 S.W.2d 103, 106 (Tex. 1986) to illustrate the "types of cases that may fall under the 'justice requires' exception."[5] Within this framework, the court concluded that justice did not require estoppel of the ordinance. 198 S.W.3d at 775.

There were no misrepresentations by the city in *Super Wash*. Conversely, both *Roberts* and *Schautteet* involved misrepresentations and assurances that were deliberately calculated to mislead. *Roberts*, 543 S.W.2d at 80; *Schautteet,* 706 S.W.2d at 105. Specifically, the court observed that those cases involved evidence that "city officials may have affirmatively misled the parties seeking to estop the city

---

[5] Both cases involved summary judgment, and the court cited *Roberts* as the only case in which it had applied the exception. *Id*. at 774. In *Roberts*, the court held that a city could be estopped from enforcing a law that required a party bringing suit against the city to file a notice of claim within thirty days of injury when there is evidence that city officials may have affirmatively misled the party seeking to estop the city and the misleading statements resulted in the permanent loss of the party's claims against the city. *Roberts*, 543 S.W.2d at 80. Whether Roberts reasonably relied on these representations was a fact issue precluding summary judgment. *Id*. In *Schautteet*, the court held that "summary judgment is improper where there are genuine issues of material fact whether a city, through its officials, led the claimant to believe that no further steps needed to be taken." 796 S.W.2d at 10.

and [those] misleading statements resulted in [the parties'] permanent loss of their claims against the cities." *Id.* Accordingly, the court held that "[e]vidence that city officials acted deliberately to induce a party to act in a way that benefitted the city but prejudiced the party weighs in favor of applying the exception . . . ." *Id.*

The *Super Wash* opinion also examined whether there was any evidence the city received a direct benefit from the car wash in exchange for the permit. *Id.* at 775–76. Super Wash argued that the city benefitted by adding a commercial business to its tax base, but the court rejected this argument as "too attenuated to establish grounds for equitable relief." *Id.* at 775–76.

The court also considered the availability of alternative relief. To this end, the court noted that had estoppel not been applied, the parties in *Roberts* and *Schautteet* would have been completely denied relief. On the other hand, Super Wash had been operating for years without a second exit and there were other remedies available "such as seeking a variance or repeal of the ordinance." *Id*. at 775. Therefore, "justice may require estoppel if it is the only available remedy; conversely, the existence of alternative remedies weighs strongly against the doctrine." *Id*.

The *Super Wash* court also considered whether Super Wash had knowledge or the means of obtaining knowledge of the ordinance and whether its reliance on the city's erroneous permit was reasonable. *See id*. at 775; *see also Johnson & Higgins*, 962 S.W.2d at 515–516 (party without knowledge and detrimental reliance are essential elements of equitable estoppel). The court noted that while the city

"issued the building permit in error, the ordinance was a matter of public record and discoverable by Super Wash before it purchased the lot." *Super Wash*, 198 S.W.3d at 775; *see also Davis v. City of Abilene*, 250 S.W.2d 685, 688 (Tex. App.—Eastland 1952, writ ref'd n.r.e.) (party seeking to estop enforcement of zoning ordinance charged with constructive notice of ordinance and therefore could not rely on permit city issued in violation of the ordinance); *T & R Assoc., Inc. v. City of Amarillo*, 688 S.W.2d 622, 629 (Tex. App.—Amarillo 1985, writ ref'd n.r.e.) (holding property owner "was charged with notice of the provisions of the zoning ordinance" and property owner relied "at its own peril" on unauthorized actions of building inspectors); *Swain v. Bd. of Adjustment of City of University Park*, 433 S.W.2d 727, 732 (Tex. App.—Dallas 1968, writ ref'd n.r.e.) (holding unauthorized act in granting permit cannot create estoppel against the citizens' right to require enforcement of zoning ordinance).[6]

The actions taken by the City to rectify its error also factored in the *Super Wash* analysis. Contrasting an earlier case where a city waited twenty years to enforce a law, the court noted that the city in *Super Wash* "acted quickly—within [four] days of learning of its error—to notify Super Wash of the Ordinance." *Super*

---

[6] Our prior opinion discussed the existence of an ordinance, albeit in a different context. *See PDT Holdings*, 2021 WL 3733059, at *6 (noting that one does not acquire a vested right in a building permit issued in violation of an ordinance and therefore PDT could not rely on permit in continuing construction).

*Wash*, 198 S.W.3d at 775 (citing *Krause v. City of El Paso*, 106 S.W. 121, 124 (1907)).

Finally, the court held that even if justice requires the application of estoppel, estoppel cannot be applied if it would interfere with the exercise of governmental functions. *Id*. "Precluding a city from performing a specific governmental function in a single instance is not per se interference with its governmental functions." *Id*. at 776. "Rather, in determining whether a case presents an appropriate instance in which to apply the exception, the relevant inquiry is whether estopping the city in a single instance will bar the future performance of that governmental function or impede the city's ability to perform its other governmental functions." *Id*. Specifically, "[a] court should consider whether estoppel will affect public safety, bar future enforcement of [an] ordinance, or otherwise impede the city's ability to serve the general public." *Id*. at 777.

PDT argues the trial court correctly concluded that the estoppel exception applies in this case because it was "misled" and "reasonably relied on the actions of city officials approving plans and issuing permits." Thus, PDT relies on what it characterizes as the City's inconsistent positions in issuing the permits rather than an affirmative misrepresentation. In support of its argument that an inconsistent position will suffice to establish equitable estoppel, PDT cites *Maguire Oil Co. v. City of Houston*, 69 S.W.3d 350, 367 (Tex. App.—Texarkana 2002, pet. denied). *Maguire*, however, is not controlling or persuasive.

*Maguire* did not involve claims for equitable relief, but rather claims for damages based on negligent misrepresentation and promissory estoppel. The city asserted sovereign immunity in response to these claims, and the oil company argued the city was estopped from asserting immunity. *Maguire*, 69 S.W.3d at 365.

The court's discussion of equitable estoppel is in the context of its application to sovereign immunity, and involved, among other things, consideration of several different applications of equitable estoppel, including our prior decision in the *Rosenthal* case. 69 S.W.3d at 365–66 (citing *City of Dallas v. Rosenthal*, 239 S.W.2d 636, 645 (Tex. App.—Dallas 1951). The court recognized that "a party seeking to invoke estoppel against a city must demonstrate that he or she qualifies under each element of equitable estoppel." *Id*. at 367. Then, the court stated, "though we agree the elements of equitable estoppel must be present, we note that the equitable estoppel recognized in *Rosenthal* was based on the city's conduct." *Id.* In a footnote, the court explained:

> The equitable estoppel doctrine applied in *Rosenthal* is closely akin to quasi-estoppel, which is a species of equitable estoppel . . . Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken . . . **Unlike equitable estoppel by conduct, however, quasi-estoppel requires no showing of a false representation or detrimental reliance.**

*Maguire*, 69 S.W.3d at 367, n. 7 (emphasis added); *see also Arrington v. County of Dallas*, 792 S.W.2d 468, 472 (Tex. App.—Dallas 1990, writ denied) (distinguishing quasi-estoppel from equitable estoppel); *Forney 921 Lot Devel. Partners I, L.P. v.*

*Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied) (discussing quasi-estoppel).

The instant case, however, does not involve an assertion that the city is estopped from claiming immunity from damages based on promissory estoppel and negligent misrepresentation. Moreover, we are not bound by decisions from our sister courts. *See City of Terrell v. Edmonds*, No. 05-19-01248-CV, 05-19-01382-CV, 2020 WL 5361978, at *7 (Tex. App.—Dallas Sept. 8, 2020, pet. denied) (mem. op.). Most important, *Maguire* pre-dates *Super Wash*, the definitive authority on applying equitable estoppel against a municipality's enforcement of an ordinance.

Further, to the extent PDT relies on *Maguire* to argue a quasi-estoppel theory, it is misplaced. PDT pleaded equitable estoppel, not quasi-estoppel. The parties agree that equitable estoppel was the only issue before the trial court, and the applicability of the exception to applying equitable estoppel forms the basis for this appeal.[7] Moreover, PDT has cited no Texas Supreme Court authority, nor are we aware of any, applying quasi-estoppel against a city seeking to enforce a zoning ordinance. Notably, an erroneous permit was also at issue in *Super Wash*, and the court did not equate the mistakenly issued permit with an affirmative reliance inducing misrepresentation. *See Super Wash*, 198 S.W.3d at 775 (observing only that permit was issued in error). Equitable estoppel, the theory on which the case

---

[7]Further, the prior panel opinion remanded solely to resolve whether equitable defenses applied to this case.

was tried, requires an affirmative misrepresentation or concealment of material facts, and those elements are not present here. *See Super Wash*, 198 S.W.3d at 775 (discussing affirmative misrepresentations that induce a party to act); *Tex. Dept. of Transp. v. A.P.I. Pipe & Supply, L.L.C.*, 397 S.W.3d 162, 170 (Tex. 2013) (equitable estoppel exception not applied because there was no evidence of deliberate inducement or that city benefitted from mistake); *Murphy v. City of Galveston*, 557 S.W.3d 235, 242 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (justice did not require estoppel because city did not affirmatively mislead property owners); *Luce Bayou Public. Util. Dist. v. Kilpatrick*, 653 S.W.3d 323, 328 (Tex. App.— Houston [14th Dist.] 2022, no pet.) (exception may apply where there is evidence that government officials affirmatively misled the parties and misleading statements resulted in permanent loss of their claims); *Trudy's Texas Star, Inc. v. City of Austin*, 307 S.W.3d 894, 910 (Tex. App.—Austin 2010, no pet.) (no evidence that city's representations and assurances were deliberately calculated to mislead).

While we do not endorse the City's erroneous issuance of two permits, the errors cannot properly be characterized as affirmative misrepresentations or deliberate actions calculated to induce PDT's reliance. In sharp contrast to *Roberts* and *Schautteet*, there is nothing to suggest the City made any affirmative representations at all.[8] There is no evidence the City represented that the RPS

---

[8] In fact, the inspectors' issuance of the permits included the caveat that the permits did not excuse failure to follow applicable ordinances.

ordinance was inapplicable or would not be enforced. There is nothing to suggest that any City official assured PDT the BOA would approve a variance. Nothing caused PDT to forego the opportunity to cure its code violations or pursue a variance. And unlike the city in the *Trudy's* case, there is no indication that the City "altered the rules as it went along and abruptly changed them in the face of political pressure." *See Trudy's*, 307 S.W.3d at 912.[9] The issuance of the permits here was a mistake, albeit costly and significant, but a mistake nonetheless.

PDT's argument that it reasonably relied on the City's erroneous permits is similarly unpersuasive. The RPS ordinance is a matter of public record and PDT is charged with notice of its provisions. *Super Wash*, 198 S.W.3d at 775; *Davis*, 250 S.W.2d at 688; *T & R Assoc., Inc.*, 688 S.W.2d at 629; *Board of Adjustment for the City of San Antonio v. East Central I.S.D.*, No. 04-14-00341-CV, 2015 WL 1244665, at *6 (Tex. App.—San Antonio 2015, pet. denied) (mem. op.) (no reliance where ordinance a matter of public record and erroneous certificate of occupancy not issued until investment on the property completed). PDT's alleged "subjective lack of knowledge" resulting from its reliance on the City's "expertise and authority" stems from its own inaction and cannot be invoked now to argue that justice requires estoppel. Indeed, PDT was charged with notice of all applicable ordinances when it

---

[9] Despite these facts, the *Trudy's* court ultimately concluded that estoppel could not be applied against the city. The court observed, however, that Trudy's was not charged with constructive notice that the city would change the rules of the game. *Id* at 913.

first applied for a permit and began construction. The City's failure to mention the RPS ordinance when it issued the first stop work order was not license for PDT to remain uninformed. And construction continued even after the City issued the second stop work order referencing the RPS ordinance. PDT fails to explain how this continued construction demonstrates reasonable reliance.

PDT also fails to address whether the City received a direct benefit from issuing the permits. *See Super Wash*, 198 S.W.3d at 775–76, *Trudy's*, 307 S.W.3d at 910; *see also City of Austin v. Garza,* 124 S.W.3d 867, 875 (Tex. App.—Austin 2003, no pet.) (city received direct donation of land in exchange of land subject to an erroneous plat); *Meuth v. City of Seguin*, No. 04-16-00183-CV, 2017 WL 603646, at *7 (Tex. App.—San Antonio Feb. 15, 2017, pet. denied) (mem. op.) (city did not receive benefit from alleged misrepresentation). We find nothing in the record to establish that the City benefitted from its mistakes in any way. Thus, this case is not one in which the City deliberately acted to induce PDT to act in a way that benefited the City and caused PDT to suffer prejudice. *See Super Wash*, 198 S.W.3d at 775.

PDT appears to suggest that the *Maguire* and *Rosenthal* cases, both of which pre-date the Supreme Court's clarification in *Super Wash,* allow application of the estoppel exception solely because a party has incurred substantial expense. *Super Wash* did not address to what extent, if any, we consider the economic harm to PDT. *See Super Wash,* 198 S.W.3d at 775–777; *Trudy's*, 307 S.W.3d at 913. We are not unsympathetic to PDT's argument that the City's mistakes caused it to incur

significant expense.[10] But if the Supreme Court had intended that estoppel apply only upon a showing of economic harm, it would have so stated rather than carefully detailing the other factors relevant to when the limited exception may apply. *See Super Wash*, 198 S.W.3d at 775–777. Subsequent Supreme Court cases have also applied these factors. *See A.P.I. Pipe & Supply*, 397 S.W.3d 170 (considering other factors).

PDT recognizes these other factors in its insistence that this case is distinguishable from *Super Wash*. Specifically, PDT maintains the equities weigh in its favor because the construction in *Super Wash* was only forty-five percent complete, whereas the Project here was ninety percent complete by the time the City discovered its error. In further distinction, PDT argues that unlike *Super Wash*, estoppel is the only available remedy because its request for a variance has been denied three times.[11] We agree that these factors weigh in favor of applying the exception to the general rule, but they do not overcome the absence of an affirmative

---

[10] PDT's brief describes this expense as "hundreds of thousands of dollars." PDT's corporate representative testified at trial that PDT spent a million dollars for construction materials when the Project commenced, and those materials would now cost approximately $500,000 more. The representative further testified that it would be more cost effective to raze the property rather than attempt to bring it into compliance.

[11] Without commenting on whether such a remedy offers a viable, realistic alternative, we note that *Super Wash* also suggested that the car wash could pursue repeal of the ordinance. *Super Wash*, 198 S.W.3d at 775. Moreover, that PDT was able to seek a variance three times demonstrates that the City's issuance of the permits did not extinguish PDT's right to pursue a claim. *See Luce Bayou*, 653 S.W.3d at 328; *Meuth*, 2017 WL 603646, at *7.

misrepresentation upon which equitable estoppel must be based, or that PDT's own conduct contributed to the predicament in which it now seeks equitable relief.

*Super Wash* instructs that the exception to the general rule is limited and available "only in exceptional cases where the circumstances clearly demand its application to prevent manifest injustice." *Super Wash*, 198 S.W.3d at 774; *see also Prasifka*, 450 S.W.2d at 836. Neither the exception, nor equitable estoppel generally, can be applied in the absence of an affirmative misrepresentation inducing reasonable reliance. *See Super Wash*, 198 S.W.3d at 775; *Trudy'*s, 307 S.W.3d at 913 (noting the case was not one in which the city acted deliberately or misled an innocent party). Accordingly, on this record, the trial court erred in concluding that manifest injustice demands its application here.

Because we have concluded that justice does not require the application of the exception to the general rule against estoppel, we need not also consider whether such application would interfere with the exercise of government functions. *See Super Wash*, 198 S.W.3d at 776; *Trudy'*s 307 S.W.3d at 913. The City's first and third issues are sustained.

## III.  Conclusion

We reverse the trial court's judgment and render judgment that PDT is not entitled to relief on its equitable estoppel claim.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

220730F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF DALLAS AND THE
BOARD OF ADJUSTMENT OF
THE CITY OF DALLAS, Appellants

No. 05-22-00730-CV      V.

PDT HOLDINGS, INC., AND
PHILLIP THOMPSON HOMES,
INC. D/B/A PHILLIP THOMPSON
CUSTOM HOMES, Appellees

On Appeal from the 14th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-08484.
Opinion delivered by Justice Garcia.
Justices Pedersen, III and Kennedy
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that: PDT HOLDINGS, INC., AND PHILLIP THOMPSON HOMES, INC. D/B/A PHILLIP THOMPSON CUSTOM HOMES are not entitled to relief on their equitable estoppel claim.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 16th day of June 2023.