

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

───────────────────────

No. 02-23-00248-CV

───────────────────────

TIFFANY MACIEJACK AND MIKE MACIEJACK, Appellants

V.

CITY OF OAK POINT, TEXAS; AND WINSTON SERVICES, INC. D/B/A
SAFEBUILT INSPECTIONS, IN ITS OFFICIAL CAPACITY AS BUILDING
INSPECTOR OF THE CITY, Appellees

─────────────────────────────────────────────

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 20-5992-431

─────────────────────────────────────────────

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

This case involves a dispute between Appellants Tiffany and Mike Maciejack and Appellees the City of Oak Point, Texas (the City), and Winston Services, Inc. (Winston Services) over permits that the Maciejacks had sought from the City to build a fence and pool on their property. The Maciejacks sued the City and Winston Services, and the City countersued for remedies related to alleged violations of City ordinances. After a bench trial, the trial court entered judgment for the City and Winston Services, and awarded the City trial and conditional appellate attorney's fees. On appeal, the Maciejacks raise five issues related to findings on their equitable-estoppel affirmative defense, findings that they had received proper notice of ordinance violations, and the attorney's-fees award. We will reverse and remand on the issue of the City's conditional appellate attorney's fees and affirm the rest of the trial court's judgment.

## I. BACKGROUND

The Maciejacks own and reside in a house in Oak Point, Texas. In April 2019, they applied for a permit with the City to build a fence along the perimeter of their yard. The City issued a fence/wall permit (Fence Permit) to the Maciejacks on May 31, 2019. The Fence Permit stated that any fence, "Must be at least 50' setback on side yard," and that, "all provisions of laws and ordinances governing this type of work will be complied with, whether specified herein or not. Granting of a permit does not presume to give authority to violate or cancel the provision of any other

State or local law regulating construction or the performance of construction." It further stated that the permit would become "null and void" if construction had not commenced within six months or if construction was suspended or abandoned for six months.

After construction began on the Maciejacks' fence, the City observed a construction crew erecting the fence within the fifty-foot setback in their side yard and verbally informed the Maciejacks of the violation. The City Manager explained to the Maciejacks in a June 6, 2020 email that, under City ordinances, their property was a "key lot," which required that the fence in their side yard not extend past the fifty-foot setback line.[1] He further informed them that they would need to obtain a variance from the City's Board of Adjustments (BOA) before they could build their fence inside that setback.

Tiffany Maciejack testified that she had submitted a diagram with their fence permit application that clearly showed that the fence would be within the setback. She said that the City Manager told them that the Fence Permit had been issued in error because it allowed for construction within the setback but assured them that a variance would be granted if requested. The City Manager denied having given her such assurance or saying that the permit had been issued erroneously. He testified

---

[1]The fence was also located within a drainage easement, which was prohibited by City ordinances.

instead that the City had never approved the Maciejacks' building a fence within the setback and that the Fence Permit correctly indicated that no fence was allowed there.

The Maciejacks filed a request with the BOA for a variance to allow them to build the fence within the side-yard setback.[2] After a hearing on this request, the BOA denied the variance. The Maciejacks initially sought judicial review of the BOA's decision but nonsuited those claims in November 2019 and removed the fence from their yard.

In May 2020, the Maciejacks applied for a permit to build a swimming pool in their backyard. In reviewing the permit application, the City discovered that the submitted site plans did not show the location of a perimeter fence to enclose the pool as required by City ordinances.[3] The City informed the Maciejacks in writing of this requirement, requested new site plans showing the fence, and reiterated that no fence would be allowed in the side-yard setback. The Maciejacks submitted new site plans showing a fence enclosing the pool.[4]

---

[2]The Maciejacks contended that they needed to build their fence within the setback to keep from disturbing shallow utility and irrigation lines that ran close to their house.

[3]Ms. Maciejack testified that she knew that they would be required to have a fence enclosing the pool before they could obtain final approval from the City.

[4]The Maciejacks contend on appeal that these resubmitted plans "unequivocally showed that the fence would be placed" within the side-yard setback. However, the plans are more ambiguous than the Maciejacks suggest—they do not contain any measurements showing exactly where the fence was proposed to have been located in relation to the setback. The City Manager testified that it was his belief upon viewing

4

The Maciejacks were issued a pond and pool permit (Pool Permit) in June 2020. The City Manager testified that the Pool Permit did not cover construction of the fence but that the City considered the Fence Permit still active and applicable to the fence. Like the Fence Permit, the Pool Permit contained language stating that it did not override other municipal codes or laws. It also expressly provided for a fifty-foot setback in the side yard.

Construction on the pool began soon after the Pool Permit was issued. The Maciejacks received the first three of five pool inspections from the City approving the pool's initial construction. Then construction on the fence began, and it was once again erected within the side-yard setback and drainage easement. Upon learning of this, the City issued a written warning to the Maciejacks on July 4, 2020.[5] The Maciejacks did not remove the noncomplying portions of the fence and were subsequently issued twenty-seven citations by the City, one each day for nearly a month. The City also issued a Stop-Work Order on July 11, demanding the cessation of all construction on the Maciejacks' property until the fence was brought into

___

the site plans that the Maciejacks "were going to build the fence either on or outside that 50-foot side[-]yard setback, but not within it."

[5]Ms. Maciejack testified that they were told by citing officers that they were being cited for either not having a fence permit or for building the fence in the wrong location. In her telling, one officer told her that the fence had only been approved to encircle a small fire pit that was being constructed near the pool. A copy of the warning was admitted into evidence and, though it is difficult to read, appears to state: "Violation (1) Ordinance - Remove Fence Post."

compliance. Copies of many of the citations were admitted into evidence and showed that the Maciejacks were cited for violating various sections of the City's fence/wall construction ordinance and for violating the Stop-Work Order. Ms. Maciejack contended at trial that the City had never sent any notices explaining exactly which pool-related ordinances the Maciejacks had violated.

On August 3, 2020, the Maciejacks sued for declaratory and injunctive relief, seeking to have the construction of their fence and pool declared lawful and to enjoin the City from enforcing the Stop-Work Order and from issuing further citations. The City counterclaimed under Texas Local Government Code Section 54 seeking (1) demolition and removal of the fence and pool due to ordinance violations, (2) to recover civil penalties for those violations, (3) declaratory relief stating that the Maciejack's pool and fence were illegally constructed and that the City was entitled to remove both structures, and (4) its attorney's fees under the Uniform Declaratory Judgment Act (UDJA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009. The Maciejacks answered and pleaded, among other things, the affirmative defense of estoppel.

Amidst the extensive litigation that followed, the Maciejacks completed—and started using—their pool after hiring a new contractor who was unaware of the Stop-Work Order.[6] Due to the Stop-Work Order, the City's inspector, Winston Services,

---

[6]Their original pool contractor had gone bankrupt.

6

could not perform the final two required pool inspections. The Maciejacks sought to remedy this by amending their petition in February 2022 to request mandamus relief requiring Winston Services to perform those inspections.

Following a bench trial in April 2023, the trial court ruled in the City's favor. It granted the City its requested declaratory relief and ordered that (1) the fence be removed within thirty days or the City could demolish it and recoup the costs, (2) the Maciejacks complete a fence around the pool's perimeter within thirty days or the City could demolish it and recoup the costs, (3) the City be awarded a $500 civil fine pursuant to Section 54.017 of the local government code, and (4) the City be awarded $302,000 for its attorney's fees and additional sums for its conditional appellate attorney's fees. The trial court also denied the Maciejack's mandamus request, entering a take-nothing judgment for Winston Services.[7]

The trial court issued extensive findings of fact and conclusions of law, which included:

### I. FINDINGS OF FACT

3. . . . Tiffany Maciejack is an individual who is an owner of the real property [in question]. . . .

. . . .

---

[7]The Maciejacks do not challenge on appeal the trial court's final judgment as it pertains to Winston Services.

8. Indicated on the face of the Fence[] Permit is the express condition that any fence "MUST BE AT LEAST 50' SETBACK ON THE SIDE YARD."

. . . .

10. The [Maciejack's property] is located in a Planned Development District[], which specifies a fifty-foot (50') side[-]yard setback . . . on corner lots [such as the Maciejack's]. . . .

11. In the City's fence ordinance, the [Maciejack's property] classifies as a "key lot" . . . .

12. In the City's fence ordinance, the location of fences in the side yard area of key lots is specifically prohibited. . . .

13. In the City's fence ordinance, the locations of fences in easements is specifically limited [to prohibit fences from being erected within drainage easements].

14. The City Manager for the City has not authorized the Maciejacks to construct the fence either within the 50-foot side[-]yard setback area, or on the drainage easement located [thereon].

. . . .

16. On June 6, 2019, the City informed the Maciejacks in writing that to receive approval to continue constructing the fence in that location would require obtaining a variance from the [BOA].

. . . .

22. After conducting the hearing and considering all provided evidence, the [BOA] denied the Maciejacks' fence variance request on the grounds that a fence constructed with a 5' setback from the property line would be located in public right-of-way or necessary easements, and because the variance failed to meet three (3) of the four (4) fence variance criteria contained in the City's ordinance, citing specifics.

. . . .

8

28. During the City's review of the Maciejacks' application [for a pool permit], the City Planner noted that the plans needed to indicate a perimeter fence around the swimming pool, and the Maciejacks complied with that requirement by modifying the plans and submitted said plans to the City.

29. The modified plans did not specify or show that the fence surrounding the swimming pool would be located in the prohibited 50-foot side[-]yard setback area or in the existing 20-foot drainage easement.

30. On June 1, 2020, the Maciejacks' swimming pool contractor was issued [the Pool Permit].

31. The City considered the Fence[] Permit issued in May 2019 to be applicable to authorize the Maciejacks to construct the necessary fence surrounding the swimming pool in accordance with the City's codes and ordinances.

32. The . . . Pool Permit noted the 50-foot side[-]yard setback area to be avoided by the Maciejacks' fence necessary to comply with City code and ordinance requirements . . . .

33. The . . . Pool Permit did not authorize construction of the required fence to enclose the Maciejacks' swimming pool; the Fence Permit served that purpose.

34. Neither the Fence[] Permit, dated May 19, 2019, nor the . . . Pool Permit, dated June 1, 2020, expressly stated that the Maciejacks were authorized to construct a fence within the prohibited 50-foot side[-]yard set[]back area, nor in the drainage easement located on the [Maciejacks' property].

35. The Maciejacks did not obtain a variance from the [BOA] to construct a fence in the prohibited 50-foot side[-]yard set[]back area, or in the drainage easement located on [their property].

36. During the process of obtaining a fence permit in 2019, during the 2019 construction of the fence, at the time the Maciejacks attempted to obtain a variance from the [BOA] in 2019, and thereafter during the process of obtaining the [P]ool [P]ermit in 2020, constructing

9

the fence in 2020, receiving municipal citations, and other contacts with the City, the Maciejacks were notified numerous times of the City's ordinance provisions applicable to their key lot [p]roperty that a fence was not allowed to be located in the 50-foot side[-]yard setback area.

37. Instead of complying with the City's codes and ordinances, the Maciejacks constructed the fence in June 2020 at a location within both the existing 20-foot drainage easement and the prohibited 50-foot side[-]yard setback area, and in or near the same location as the previous fence was constructed, then removed, in 2019.

38. The City attempted to gain compliance with the fence location requirement by first orally discussing the fence location error, and then by issuing citations to the Maciejacks.

. . . .

41. The City's efforts to obtain the Maciejacks' compliance with the City's codes and ordinances concerning the location of their fence were repeatedly rejected by the Maciejacks and their contractor.

42. As a result of the Maciejacks' violation of the terms of the . . . Pool Permit and Fence[] Permit, and the Maciejacks' violations of the City's code and ordinance provisions, by constructing the fence within both the existing 20-foot drainage easement and the required 50-foot side[-]yard setback area, . . . the City . . . issued a Stop Work Order to stop all work from being performed on the [Maciejacks' property] until the fence came into compliance with the City's code and ordinance provisions.

. . . .

44. During the prosecution of this lawsuit, the Maciejacks continued construction of the swimming pool, have completed that construction, and are using the swimming pool. . . .

. . . .

47. The Maciejacks did not notify their replacement swimming pool construction company of the Stop[-]Work Order existing on their

10

property, and that company otherwise did not know of the Stop[-]Work Order until after its work on the pool was completed.

48.    During the construction of [the] swimming pool after the Stop Work Order was issued, the Maciejacks did not obtain any required inspections of the work.

49.  The Maciejacks' swimming pool is not enclosed by a fence as required by City [c]ode provisions.

## II.  CONCLUSIONS OF LAW

3.   The Maciejacks are expected and deemed to know the law, including City ordinances applicable to [their property].

4.    Because the fence on the [Maciejacks' property] is located within the 50-foot side[-]yard setback area, and on the 20-foot drainage easement . . . the Maciejacks are in violation of City ordinance provisions regarding the location of privacy fences on residential property that is a key lot in the City.

5.    Because the Maciejacks completed construction of the swimming pool without the City's knowledge, without obtaining required inspections and approvals, and in violation of the valid Stop Work Order, the Maciejacks are in violation of City ordinance provisions regarding swimming pool construction and inspection. . . .

. . . .

8.  The Maciejacks were specifically notified in writing that even if a permit is issued, "all provisions of laws and ordinances governing this type of work will be complied with whether specified herein or not. Granting of a permit does not presume to give authority to violate or cancel the provision of any other state or local law regulating construction or the performance of construction". . . .  As a result, both the City and the Maciejacks were aware that the issuance of a fence permit or a pool permit did not excuse compliance with the applicable City fence ordinance provisions and swimming pool ordinance provisions.

. . . .

11

10. The Texas Supreme Court has stated that the rule preventing equitable estoppel from being enforced against municipalities "derives from our structure of government, in which the interest of the individual must at times yield to the public interest and in which the responsibility for public policy must rest on decisions officially authorized by the government's representatives, rather than on mistakes committed by its agents." [*City of White Settlement v.*] *Super Wash, Inc.*, 198 S.W.3d [770, ]773[(Tex. 2006)]. . . . As a result, the Maciejacks' claims must be denied as a matter of law.

11. In this case, the City was exercising its governmental functions in enforcing its ordinances against the Maciejacks.

12. The Maciejacks cannot estop the City from enforcing its ordinances based on an official's erroneous actions or permit issued with attachments that conflict with the City ordinance limitations, or based upon the Stop Work Order issued on [their property].

. . . .

16. Because of the Maciejacks' violations of the City ordinance provisions, they do not have "clean hands," and a party with "unclean hands" is not permitted to pursue equitable relief. *Foxwood Homeowners Ass'n v. Ricles*, 673 S.W.2d 376, 379 (Tex.[ ]App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

. . . .

20. The City's counterclaim brought under Chapter 54 of the Texas Local Government Code is based upon § 54.012 that authorizes a municipality to bring a civil action for enforcement of its ordinances.

. . . .

24. Under the City's ordinances concerning swimming pools, construction of a swimming pool requires the pool to be enclosed in a perimeter fence, and to receive inspections during and at the conclusion of construction. . . . The Maciejacks' swimming pool is not enclosed by a perimeter fence, and therefore violates City ordinance provisions

12

requiring such enclosure. The Maciejacks' swimming pool did not receive necessary inspections during and at the conclusion of construction where the Maciejacks completed construction of the swimming pool without the City's knowledge and without obtaining inspections required by City ordinances.

The Maciejacks filed a motion to modify the judgment or, alternatively, for a new trial, which the trial court denied. This appeal followed.

## II. DISCUSSION

The Maciejacks raise five issues on appeal: (1) the evidence was insufficient to support the trial court's findings that the City was not equitably estopped from recovery; (2) the evidence was insufficient to support the trial court's findings that the City had given proper notice to the Maciejacks to recover under Chapter 54 of the Texas Government Code; (3) the trial court erred in awarding attorney's fees for the City's UDJA claims because they were duplicative of its Chapter 54 claims; (4) because reversal on the merits is appropriate, remand is necessary to determine whether the attorney's fees were equitable and just; and (5) the attorney's-fees award was improper because the City did not segregate its fees and because the evidence was insufficient to support the award for conditional appellate fees.

### A. STANDARD OF REVIEW

A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). As with jury findings, a trial court's fact findings on disputed issues are not conclusive, and when the appellate record contains a reporter's record, an appellant

13

may challenge those findings for evidentiary sufficiency. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Super Ventures, Inc. v. Chaudhry*, 501 S.W.3d 121, 126 (Tex. App.—Fort Worth 2016, no pet.). We review the sufficiency of the evidence supporting challenged findings using the same standards that we apply to jury findings. *Catalina*, 881 S.W.2d at 297.

Anything more than a scintilla of evidence is legally sufficient to support a finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996); *see also 4Front Engineered Sols., Inc. v. Rosales*, 505 S.W.3d 905, 909 (Tex. 2016) ("The evidence is legally sufficient if . . . there is more than a scintilla of evidence on which a reasonable juror could find the fact to be true.").

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). If the evidence is factually sufficient, then it is necessarily legally sufficient as well. *In re A.S.*, No. 02-16-00076-CV, 2016 WL 3364838, at *7 (Tex. App.—Fort Worth June 16, 2016, no pet.) (mem. op).

14

In a bench trial, findings of fact are the exclusive province of the trial court, making it the sole judge of the witnesses' credibility. *Bell Helicopter Textron, Inc. v. Burnett*, 552 S.W.3d 901, 913 (Tex. App.—Fort Worth 2018, pet. denied). Further, unchallenged fact findings are entitled to the same weight as a jury's verdict and are binding on an appellate court unless either the contrary is established as a matter of law or no evidence supports the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *Inimitable Grp., L.P. v. Westwood Grp. Dev. II, Ltd.*, 264 S.W.3d 892, 902 & n.4 (Tex. App.—Fort Worth 2008, no pet.).

## B. EQUITABLE ESTOPPEL

In their first issue, the Maciejacks argue that the evidence was legally and factually insufficient to support the trial court's findings of fact that equitable estoppel did not bar the City's counterclaims.[8] While acknowledging that equitable estoppel generally does not apply against municipalities in the exercise of their government functions, the Maciejacks contend that this case is so exceptional as to require the application of a very narrow exception recognized by Texas courts: that a municipality can be estopped if no governmental function was impaired and estoppel is necessary to prevent injustice. *See City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 774 (Tex. 2006). Because the Maciejacks did not challenge every independent ground that could support the trial court's judgment that equitable estoppel did not apply to this

---

[8]They specifically challenge the trial court's findings of fact 41, 42, 48, and 49 and its conclusions of law 5, 8, 10, 12, and 24.

case—namely, that the Maciejacks' unclean hands precluded its application—we must affirm the judgment on that independent ground. *See S.W. ex rel. A.W. v. Arlington Ind. Sch. Dist.*, 435 S.W.3d 414, 419 (Tex. App.—Fort Worth 2014, no pet.).

"[A]n appellant must challenge all independent grounds supporting the judgment or legal conclusion under attack." *Akhtar v. Leawood HOA, Inc.*, 525 S.W.3d 814, 819 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *see Oliphant Fin. LLC v. Angiano*, 295 S.W.3d 422, 423 (Tex. App.—Dallas 2009, no pet.) ("An appellant must attack all independent bases or grounds that fully support a complained of ruling or judgment."). "[I]f an independent ground may fully support the complained-of ruling or judgment, but the appellant assigns no error to that independent ground, then we 'must accept the validity of that unchallenged independent ground and thus any error in the grounds challenged on appeal is harmless because the unchallenged independent ground fully supports the complained-of ruling or judgment.'" *S.W. ex rel. A.W.*, 435 S.W.3d at 419 (cleaned up) (quoting *Britton v. Tex. Dep't of Crim. Just.*, 95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.)).

The trial court's conclusion of law 16 stated, "Because of the Maciejacks' violations of City ordinance provisions, they do not have 'clean hands,' and a party with 'unclean hands' is not permitted to pursue equitable relief." The trial court is correct that a party with unclean hands generally cannot invoke an equitable defense—including equitable estoppel—for its benefit. *See Douglas v. Aztec Petroleum Corp.*, 695 S.W.2d 312, 317–18 (Tex. App.—Tyler 1985, no writ) ("A person may not

16

predicate an estoppel in his favor on, or assert such estoppel for the purpose of making effective, obtaining the benefit of, or shielding himself from the results of his own fraud, dereliction of duty, violation of the law, wrongful act[,] or other inequitable conduct in the transaction in question." (cleaned up)); *El Paso Nat'l Bank v. Sw. Numismatic Inv. Group, Ltd.*, 548 S.W.2d 942, 949 (Tex. App.—El Paso 1977, no writ) (explaining the general rules that the "doctrine of estoppel is for the protection of innocent persons, and only the innocent may invoke it" and that the doctrine of estoppel in its very nature contains "some element of the maxim that one must come into a court of equity with clean hands" (internal quotations omitted)); *see also Champlin Oil & Refining Co. v. Chastain*, 403 S.W.2d 376, 408 (Tex. 1965) (Calvert, J., dissenting) (explaining that having clean hands "is a necessary predicate for the plea [of estoppel]. . .").

The Maciejacks, however, did not challenge this conclusion of law. Accordingly, because this conclusion stands as an independent ground to support the trial court's determination that equitable estoppel was inapplicable against the City, we must affirm the trial court's judgment on this issue.

But even if we were to reach the merits of the Maciejacks' first issue, this case is not exceptional enough to hold that justice required that equitable estoppel be applied against the City. *See Super Wash*, 198 S.W.3d at 774. In *Super Wash*, the supreme court reiterated the general rule that a city cannot be estopped from performing its governmental functions. *Id.* at 775. It then explained that an

17

exception to this rule exists if "justice requires" that estoppel be applied against a city and such application will not interfere with the exercise of its governmental functions. *Id.* at 774. The court cautioned, however, "that this exception is available only in exceptional cases where the circumstances clearly demand its application to prevent manifest injustice." *Id.* (internal quotations omitted).

The court then discussed a number of factors that may be helpful in determining if "justice requires" that estoppel be applied against a city: whether (1) the city made misrepresentations that were deliberately calculated to mislead, (2) the city received a direct benefit from the issuance of a permit that was allegedly issued in error, (3) the adverse party had other remedies available that it has not pursued (such as seeking a variance or a repeal of the ordinance), (4) the adverse party had knowledge of the ordinance, and (5) the city acted—including how quickly it acted— to rectify its error. *Id.* at 775–76.

Here, there was no evidence to suggest that the City made misrepresentations that were deliberately calculated to mislead. *See id.* at 774–75. It is true that Ms. Maciejack testified that the City Manager informed her that she would be granted a variance for the first fence if the Maciejacks requested one. However, there is no evidence that these statements were made with the intent to mislead. And, of course, the City Manager testified that he made no such assurance. The trial court, as the factfinder and sole judge of the witnesses' credibility, could have wholly disregarded Ms. Maciejack's testimony and believed the City Manager's. *See Bell Helicopter,*

18

552 S.W.3d, at 913. Likewise, there is no evidence that the City would have received a benefit from issuing an erroneous permit or assuring the Maciejacks of a successful variance request. In fact, the Maciejacks concede that there was no real benefit for the City in this regard.

Further, the Maciejacks had a very logical remedy that they had not yet pursued: removing the offending portion of the fence and building it outside of the side-yard setback and drainage easement. *See Super Wash*, 198 S.W.3d at 775. The trial court found (and the record supports) that the Maciejacks' constructing the fence within the setback and drainage easement was the cause of the Stop-Work Order. It further found that the order was issued to stop work "until the fence came into compliance with the City's code and ordinance provisions."

Finally, there is no question that the Maciejacks knew of the ordinances and were notified many times by the City of their violations thereof. *See id.* at 775. The trial court found (and the record supports) that the Maciejacks were consistently and repeatedly informed about the applicable ordinances and had themselves instituted numerous judicial and administrative proceedings pursuant to those ordinances.

Applying the *Super Wash* factors to this case, we cannot conclude that justice required that estoppel be applied against the City. *See City of Dallas v. PDT Holdings, Inc.*, No. 05-22-00730-CV, 2023 WL 4042598, at *4 (Tex. App.—Dallas June 16, 2023, pet. filed) (mem. op.) (applying *Super Wash* factors).

For the foregoing reasons, we overrule the Maciejacks' first issue.

19

## C. NOTICE UNDER CHAPTER 54

In various arguments within their second issue, the Maciejacks contend that—before the City could enforce its fence and pool ordinances or be awarded a civil fine for ordinance violations under Chapter 54—it was required to notify them of the particular ordinances that they had violated. They contend that the evidence conclusively established that they did not receive the proper notices and that, thus, the trial court erred in finding to the contrary.[9] We disagree with the Maciejacks.

First, the Maciejacks argue that the City was required to adhere to the notice provisions in Section 54.005(a) of the local government code but failed to do so. Section 54.005(a)—entitled "Notices to Certain Property Owners"—provides:

> (a) A governmental entity that is required by statute, rule, regulation, or ordinance to send a notice to any owner of real property for the purpose of enforcing a municipal ordinance *may* include the following statement in the notice: "According to the real property records of _____ County, you own the real property described in this notice. If you no longer own the property, you must execute an affidavit stating that you no longer own the property and stating the name and last known address of the person who acquired the property from you. The affidavit must be delivered in person or by certified mail, return receipt requested, to this office not later than the 20th day after the date you receive this notice. If you do not send the affidavit, it will be presumed that you own the property described in this notice, even if you do not." The notice must be delivered in person or by certified mail, return receipt requested.

[9]The Maciejacks challenge the trial court's findings of fact 30, 31, 32, 34, 35, 36, and 38 and its conclusions of law 3 and 22.

Tex. Loc. Gov't Code Ann. § 54.005(a) (emphasis added). The Maciejacks maintain that this section creates a "condition precedent" to a municipality bringing a claim under Chapter 54. In their view, because the City did not send the Maciejacks a notice containing the Section 54.005(a) statement regarding ownership of the subject property, "the trial court lacked legally and factually sufficient evidence for the City's award of any recovery under Chapter 54 generally."

The Maciejacks misread this section. It clearly provides that a governmental entity "may" send a notice containing the Section 54.005(a) ownership statement but does not mandate that it do so. It appears that Section 54.005 is aimed at providing governmental entities a voluntary mechanism for discerning the proper owner of a subject property and to raise presumptions related to that ownership and whether the entity fulfilled its notice requirements. *Id.* § 54.005(a)–(g). Because the City was not required to send notice under Section 54.005(a), we reject this argument.

Next, the Maciejacks argue that the City was required to give them prior written notice of which pool and fence ordinances they had violated before it could seek to have the fence and pool demolished under Section 54.018.[10] Relatedly, they argue that the City was required to have "actually notified" them of what ordinances they had

_____

[10]Section 54.018 allows for a municipality to "bring an action to compel the repair or demolition of a structure or to obtain approval to remove the structure and recover removal costs." Tex. Loc. Gov't Code Ann. § 54.018.

violated before being entitled to a civil-fine award under Section 54.017.[11] And they contend that the evidence was legally and factually insufficient to support the trial court's findings that the City had provided these notices. In their view, they "had no way of knowing and adequately rectifying any such ordinance violation unless they were explicitly told what ordinance they were violating and how it could be remedied."

The parties disagree about whether—in light of various City ordinances that mandate written notice and the Chapter 54 pleading provisions that do not require a showing of notice[12]—the City had to give prior notice to the Maciejacks of what ordinances they had violated. We will assume, without deciding, that the City was required to provide such notice but will conclude that the evidence was sufficient to support the trial court's findings that the Maciejacks received them.

---

[11]Section 54.017 allows a municipality to recover a civil penalty for ordinance violations if it proves that "(1) the defendant was actually notified of the provisions of the ordinance; and (2) after the defendant received notice of the ordinance provisions, the defendant committed acts in violation of the ordinance or failed to take action necessary for compliance with the ordinance." Tex. Loc. Gov't Code Ann. § 54.017(a).

[12]To bring claims under Section 54.012, as the City did here, a municipality is required to plead "only" the following allegations: "(1) the identification of the real property involved in the violation; (2) the relationship of the defendant to the real property or activity involved in the violation; (3) a citation to the applicable ordinance; (4) a description of the violation; and (5) a statement that this subchapter applies to the ordinance." Tex. Loc. Gov't Code Ann. § 54.015(a).

The trial court found that the Maciejacks had been notified "numerous times" throughout the years-long history of this case of the City's ordinance provisions making it illegal to construct their fence in the side-yard setback. It also found that the City had conveyed this information orally and in writing via emails, the many citations it had issued to the Maciejacks, and the Stop-Work Order.

These findings are supported by ample evidence in the record:

- The Fence Permit stated that the fence could not be within the side-yard setback.

- After the Maciejacks started building their first fence within the setback, the City Manager informed them orally and in writing that the fence could not be erected there unless they obtained a variance.

- The Maciejacks requested such a variance, attended a variance hearing, and were denied the variance.

- The Maciejacks sought judicial review of the variance denial before nonsuiting that claim.

- After the Maciejacks applied for a pool permit, the City informed them that City pool ordinances required every pool to be enclosed with a fence and reiterated that their fence could not be inside the side-yard setback.

- Ms. Maciejack testified that she was aware that City ordinances required that pools be enclosed with a fence.

- The Pool Permit provided for a fifty-foot setback in the side yard.

- When the Maciejacks again started erecting a fence within the setback, the City issued them a written warning and 27 citations that referenced the City's fence ordinance.

23

- The City issued a Stop-Work Order demanding compliance with City ordinances.

This evidence shows that the Maciejacks were fully aware of and had been actually notified by the City (orally and in writing) of the relevant fence and pool ordinances underlying the violations. It shows, in short, that the fence was noncompliant because it was located in the side-yard setback and that the pool was noncompliant because it did not have a compliant fence encircling it. Based on this record, we cannot conclude that the evidence supporting the trial court's findings related to the adequacy of the City's notices was so weak or so contrary to the overwhelming weight of the evidence to require a new trial. *See Pool*, 715 S.W.2d at 635.

For these reasons, we overrule the Maciejacks' second issue.

### D. DUPLICATIVE ATTORNEY'S FEES

In their third issue, the Maciejacks argue that the trial court abused its discretion by awarding the City its attorney's fees under the UDJA because the City's UDJA claim was duplicative of its Chapter 54 claims. They contend that the City's requested declaratory relief was no greater than the relief it was entitled under Chapter 54; thus, the City was simply using the UDJA as a vehicle to recover attorney's fees. Among other arguments, the City posits that the award was proper because it had prevailed in defending against the Maciejacks' UDJA claims, for which the trial court could award it attorney's fees. We agree with the City.

24

We review de novo whether attorney's fees are recoverable under statute. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999). "When a statute states that a trial court 'may' award attorney's fees, such an award is discretionary and we review the trial court's ruling under the abuse of discretion standard." *Playoff Corp. v. Blackwell*, 300 S.W.3d 451, 458–59 (Tex. App.—Fort Worth 2009, pet. denied). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Attorney's fees are recoverable only when provided by statute or contract. *Dall. Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992). In a proceeding brought under the UDJA, the trial court "may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009. Whether a party requested declaratory relief in its own counterclaims or simply requested attorney's fees for defending against another party's request for declaratory relief "is of no moment" to analyzing whether the trial court abused its discretion in awarding fees under the UDJA. *Severs v. Mira Vista Homeowners Ass'n, Inc.*, 559 S.W.3d 684, 712 (Tex. App.—Fort Worth 2018, pet. denied); *see Bradt v. State Bar of Tex.*, 905 S.W.2d 756, 760 (Tex. App.—Houston [14th Dist.] 1995, no pet.) (holding that the "appellee was entitled to reasonable attorney's fees in defending the [UDJA] suit"). Indeed, a trial court can even award attorney's fees under the UDJA to a nonprevailing party. *Severs*, 559 S.W.3d 684 at 712.

Both the Maciejacks and the City requested declaratory relief and attorney's fees under the UDJA. In its final judgment, the trial court found that the City was the prevailing party and awarded it attorney's fees pursuant to the UDJA. Because the trial court could have awarded the City its attorney's fees simply for defending against the Maciejacks' UDJA claims, and because it did not act without reference to any guiding rules and principles, we hold that the trial court did not abuse its discretion and therefore overrule the Maciejacks' third issue. *See id.*

## E.  MERITS-BASED REVERSAL AND REMAND

In their fourth issue, the Maciejacks argue that, because reversal is required on their merits-based issues, the nature of the relief has changed thus necessitating a remand to determine the equitable and just nature of the attorney's fees. We disagree.

An award of attorney's fees is within the discretion of the trial court, but the question of whether fees are equitable and just is a question of law. *Morath v. The Tex. Taxpayer & Student Fairness Coal.*, 490 S.W.3d 826, 885 (Tex. 2016). If the extent to which a party prevailed has changed on appeal, we should remand the issue of attorney's fees to the trial court for a reconsideration of what is equitable and just. *Id.*

Having overruled all of the Maciejacks' merits issues, our disposition has not changed the extent to which either party prevailed. *See id.* Accordingly, we overrule the Maciejacks' fourth issue.

26

## F. ATTORNEY'S-FEES AWARD

In their fifth issue, the Maciejacks contend that the City's attorney's-fees award was improper because the City (1) failed to segregate its fees between its recoverable claims (under the UDJA) and its nonrecoverable claims (under Chapter 54) and (2) failed to present legally sufficient evidence to support its conditional appellate fees. The City counters that the facts related to the parties' claims and defenses were so inextricably intertwined as to relieve it of any duty to segregate the fees and that the evidence was sufficient to support the conditional appellate-fees award. We disagree with the Maciejacks' first contention but agree with their second.

### 1. Segregation of Fees

Generally, when a party asserts multiple claims, some of which support recovery of attorney's fees and some of which do not, the party must segregate the attorney's fees attributable to claims for which fees are recoverable. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006). However, segregation of fees is not required when discrete legal services advance both recoverable and unrecoverable claims such that they are "inextricably intertwined":

> A recognized exception to this duty to segregate arises when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts. Therefore, when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are intertwined to the point of being inseparable, the party suing for attorney's fees may recover the entire amount covering all claims.

27

*Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991) (internal quotations and citations omitted); *see Chapa*, 212 S.W.3d at 313–14.

Here, all of the Maciejacks' and the City's claims, defenses, and requested relief relied on exactly the same set of operative facts in order to answer the same question: Did the Maciejacks violate City ordinances? The proof essential to the City's prosecution of its UDJA and Chapter 54 claims was the same proof essential to its successful defense against the Maciejacks' UDJA claim and request for injunctive relief. Indeed, the Maciejacks concede on appeal that the parties' UDJA claims are "mirror image claims" of the City's Chapter 54 claims. Thus, the Maciejacks' claims and the City's counterclaims were so inextricably intertwined as to fall within the exception and excuse the City from the duty to segregate fees. *Sterling*, 822 S.W.2d at 11. We hold that the trial court did not abuse its discretion by concluding that the City was not required to segregate its fees, and we overrule this portion of the Maciejacks' fifth issue.

### 2. Conditional Appellate Fees

The City's attorney testified as an expert regarding the City's requested attorney's fees. The entirety of his testimony related to the request for conditional appellate fees is as follows:

> [B]ased upon my experience as a lawyer in the North Texas area, and as one who is board certified in civil appellate law . . ., I can testify that if an appeal is pursued by [the Maciejacks] from the final judgment in this case that $35,000 is a reasonable and necessary attorney fee amount to be awarded to the City for defending an unsuccessful appeal by the

28

[Maciejacks] to the Court of Appeals. I further believe that if [the Maciejacks] pursue an appeal to the Texas Supreme Court in this case, that a reasonable and necessary attorney fee amount to be awarded to the City for defending such additional appeal, if unsuccessful, is $25,000.

Based on this evidence, the trial court awarded the City its requested conditional appellate fees.

To support a conditional award of appellate attorney's fees, a party must provide "opinion testimony about the services [they] reasonably believe[ ] will be necessary to defend the appeal and a reasonable hourly rate for those services." *Yowell v. Granite*, 620 S.W.3d 335, 355 (Tex.2020); *see Wells Fargo Bank, N.A. v. Rodriguez*, No. 02-21-00155-CV, 2022 WL 803839, at *5 (Tex. App.—Fort Worth Mar. 17, 2022, no pet.) (holding evidence insufficient to support award of conditional appellate fees where it consisted only of flat-fee estimate). The City did not provide any testimony about the particular services that would be needed to defend an appeal nor did it provide a reasonable hourly rate for those services. Accordingly, we hold that the evidence was insufficient to support the award of its conditional appellate fees, sustain this portion of the Maciejacks' fifth issue, and remand the issue of conditional appellate attorney's fees to the trial court. *See Wells Fargo*, 2022 WL 803839, at *5.

## III. CONCLUSION

Having sustained that portion of the Maciejacks' fifth issue pertaining to the award of conditional appellate fees, we remand that portion of issue five to the trial

29

court for further proceedings consistent with this opinion.  We affirm the rest of the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Delivered:  June 27, 2024